Bates vs. The Chicago, Milwaukee & St. Paul R'y Co., Garnishee, etc.

BATES vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Garnishee, etc.

*March 22 — April 8, 1884.*

GARNISHMENT: COMMON CARRIER. *(1, 2) Service on one officer when property is in possession of another: Court and jury. (3) Property out of state. (4) Goods in transit.*

1. Where the law authorizes service of garnishee process upon one officer of a corporation while the property sought to be reached is in the actual possession of another officer or employee, if the latter delivers such property to a person authorized to receive the same, before he can, with reasonable diligence on the part of the officer served, be notified to retain possession thereof, the corporation is not liable as garnishee.

2. A garnishee summons was served at five o'clock A. M. upon the general solicitor of a railway company, who did not know that the company had any property of the principal defendant in its possession, whose business did not require him to have such knowledge, and who had no ready means of ascertaining the fact. Within two and one half hours afterwards the property in question was delivered to the consignee at a place nearly one hundred miles distant from the place of service. *Held* that, as a matter of law, the company was not liable as garnishee.

3. Property outside of the state is not the subject of garnishment under our statute.

4. A common carrier cannot be held liable as a garnishee for goods in actual transit when the process is served.

APPEAL from the Circuit Court for *Racine* County. The case is thus stated by Mr. Justice TAYLOR:

"On the 2d day of March, 1882, the respondent commenced an action against P. H. Cunningham in the Racine county circuit court, and at the same time made an affidavit as required by law, and issued a garnishee summons against the railway company. A copy of the affidavit and garnishee summons was served upon John W. Cary, the general solicitor of said company, at the city of Milwaukee, on the 2d day of March, 1882, at five o'clock A. M. of that day. In

due time the railway company made answer to said garnishee summons, denying any indebtedness by the company to said Cunningham, and also denying that it then had or now has in its possession or under its control any real estate, personal property, effects, or credits of any description whatever belonging to the said Cunningham, or in which he has any interest, and alleging that the company is in no way liable as garnishee in the action. Upon this answer the plaintiff took issue.

" On the trial of the issue it appeared that at the time the garnishee summons was served on the general solicitor of the company at Milwaukee, the railway company had a carload of hogs in its possession, shipped by the defendant Cunningham at Lyons, Walworth county, in this state, on the 1st day of March, 1882, consigned to one G. B. Van Norman at the Union stock-yards in Chicago; that at the time the garnishee summons was served in Milwaukee on the general solicitor, the car-load of hogs was in actual transit, on its way to Chicago, and was already south of the boundaries of this state and in the state of Illinois; and that the hogs were delivered by the company's agents to the consignee in Chicago at 7:20 o'clock A. M. on said 2d day of March, 1882. The jury found that Cunningham owned the car-load of hogs at the time the summons was served, notwithstanding the fact that they were consigned to Van Norman.

" On the trial the counsel for appellant requested the circuit judge to instruct the jury as follows:

" ' 1. If you find from the evidence that at the time the garnishee summons was served on the defendant garnishee, the *Chicago, Milwaukee & St. Paul Railway Company*, on March 2, 1882, the consignment of hogs in question was outside of the state of Wisconsin, then the defendant railroad company is not liable as garnishee, and you must find for the defendant.

"'2. If you find from the evidence that the garnishee summons was served on the defendant at an unreasonable hour in the morning, and at such a time that the garnishee defendant could not stop the delivery of the consignment of hogs in question, then and in that case the defendant railroad company is not liable as garnishee, and you must find for the defendant.

"'3. If you find from the evidence that the consignment of hogs in question arrived in Chicago, in the state of Illinois, at about seven o'clock A. M. on March 2, 1882, and were delivered at about 7:20 A. M. of the same day, and further find that the garnishee summons was served in the city of Milwaukee, Wisconsin, at five A. M. of the 2d of March, A. D. 1882, then the service of the garnishee summons was at an unreasonable time, and the defendant railroad company is not liable as garnishee.'

"The learned circuit judge refused to give either of said instructions, and the defendant took proper exceptions to such refusal.

"The jury found a special verdict as follows:

"'1. At the time of the service of the garnishee summons upon the *Chicago, Milwaukee & St. Paul Railway Company* in this action, was said railway company in possession of a car-load of hogs, shipped by the defendant, P. H. Cunningham, to G. B. Van Norman, Chicago, Ill.? *Answer.* Yes.

"'2. What was the value of said car-load of hogs shipped by P. H. Cunningham to G. B. Van Norman, March 1, 1882, and delivered to Van Norman's agent at Chicago at 7:20 A. M., March 2, 1882? *A.* $726.40.

"'3. Did the consignment of hogs in question, shipped by P. H. Cunningham from Lyons and Burlington, Wis., to G. B. Van Norman, Chicago, Ill., on the 1st day of March, 1882, belong to said P. H. Cunningham, and did he own said hogs? *A.* Yes.

"'4. To whom did the car-load of hogs shipped from

Bates vs. The Chicago, Milwaukee & St. Paul R'y Co., Garnishee, etc.

Lyons and Burlington, Wis., to G. B. Van Norman, Chicago, Ill., March 1, 1882, belong at the time of the service of the garnishee summons in this case?   A.   P. H. Cunningham.

" '5. Was the said consignment of hogs outside of the state of Wisconsin and of the county of Racine, and in transition, at the time the garnishee summons in this case was served on the *Chicago, Milwaukee & St. Paul Railway Company*, on March 2, 1882?   A.   Yes.

" '6. Was the property in question delivered by the *Chicago, Milwaukee & St. Paul Railway Company* to Van Norman's agent at Chicago at 7:20 A. M., March 2, 1882?   A. Yes.

" '7. Was the garnishee summons served on John W. Cary, general solicitor of the garnishee defendant, at five o'clock A. M., March 2, 1882?   A.   Yes.

" '8. Did the garnishee defendant, the *Chicago, Milwaukee & St. Paul Railway Company*, at the time of the service of the garnishee summons herein, have any property in its possession owned by P. H. Cunningham?   A.   Yes.

" '9. Do you find for the plaintiff or for the garnishee defendant?   A.   For plaintiff.'

" Upon this verdict both parties moved for judgment. The court rendered judgment in favor of the plaintiff, holding the company liable as garnishee.   From such judgment the company appeals to this court."

For the appellant there was a brief by *Fuller & Fuller*, attorneys, and a supplemental brief by *John W. Cary*, of counsel, and the cause was argued orally by *H. H. Field* and *P. Fuller*.

*Robert F. Pettibone*, for the respondent.

TAYLOR, J.   After a careful consideration of the facts, and the arguments of the learned counsel for the respective parties, we have concluded that the learned circuit judge erred in refusing to instruct the jury as requested by the appellant,

Bates vs. The Chicago, Milwaukee & St. Paul R'y Co., Garnishee, etc.

and also in rendering judgment in favor of the respondent upon the special verdict.

1. It seems to us very plain that where the law authorizes the service of a garnishee summons upon an officer of a corporation who has not in his actual possession the property sought to be reached by such process, but such property is in the possession of some other officer or employee of the company, and such other officer or employee delivers such property to a person authorized to receive the same, before he can, with reasonable diligence on the part of the officer served, be notified to retain the possession thereof, such service is not sufficient to charge the corporation as garnishee. Nor do we think the officer served is under obligation to use extraordinary diligence in notifying the officer or other employee in charge of the property of the service of the process. He is bound to use reasonable diligence in respect to the matter, and if by the use of reasonable diligence notice cannot be given to the person in the actual possession of the property before it has lawfully passed from the possession of the corporation, the corporation cannot be held liable as garnishee in respect to such property.

In this case the garnishee summons was served at an unusual time, five o'clock in the morning, on the 2d of March, at a time when the officer was probably in his bed, upon an officer who, as the evidence shows, had no knowledge of the fact that the company had any property of the defendant in its possession, and whose business did not require him to have any knowledge upon that subject; and, so far as the evidence in this case shows, he had at hand no ready means of ascertaining the fact that it had any property of defendant in its possession; and within two and one half hours of the service of the process upon such officer of the company the property sought to be reached by the proceeding was without notice delivered to the person entitled to receive the same under the contract by which the company held pos-

session of it when the summons was served, at a place nearly a hundred miles from the place where the officer was served with the summons. We think that, as a question of law, the service was insufficient to charge the company as garnishee.

We think the rule applicable to the notice which must be given by the vendor to stop goods *in transitu*, should apply to a case of this kind. The rule applicable to such cases is well stated by Parke, B., in *Whitehead v. Anderson*, 9 Mees. & W., 534. He says: "If notice be given to the principal whose servant has the actual possession of the goods, it must be given at such a time and under such circumstances that the principal, by the exercise of reasonable diligence, may communicate it to his servant in time to prevent the delivery to the consignee; and to hold that a notice to a principal at a distance is sufficient to revest the property in the unpaid vendor, and render the principal liable in trover for a subsequent delivery by his servant to the vendee, when it was impossible, from the distance and want of means of communication, to prevent that delivery, would be the height of injustice. The only duty that can be imposed on the absent principal is to use reasonable diligence to prevent the delivery." It seems to us that it would be the height of injustice to hold the railroad company liable as garnishee for goods which their servants and employees have delivered to the consignees entitled to receive them, having no notice at the time of making such delivery that any garnishee process had been served, and before a reasonable time had elapsed, after the service upon a distant officer of the corporation, within which notice could have been given to stop such delivery. To hold the company liable in such case would do violence to the statute which directs that "the court shall render such judgment in all cases as shall be just to all the parties, and properly protect their respective interests," etc. R. S., sec. 2766. The rule above stated was held applicable

to the garnishee process by the supreme court of Massachusetts in *Spooner v. Rowland*, 4 Allen, 485. In this case it was held that the service of the process on the secretary of an insurance company in Boston, to attach money due on an insurance policy, was insufficient, when it appeared that three hours after the service the agent of the company paid the loss at Worcester to the claimant, without actual notice of the process.

2. Notwithstanding the general language of our statute upon the subject of garnishment, that " any creditor shall be entitled to proceed by garnishment, in the circuit court of the proper county, against any person (except a municipal corporation) who shall be indebted to, or have any property whatever, real or personal, in his possession or under his control, belonging to such creditor's debtor, in the cases, upon the conditions, and in the manner prescribed in this chapter " (R. S. sec. 2752),— we feel constrained to hold that the personal property or real estate in his possession or under his control must be limited to personal property or real estate within this state, and that in the absence of any fraud or connivance on the part of the garnishee to aid the debtor in defrauding his creditors, personal property or real estate which is lawfully in the possession or under the control of the garnishee outside of this state is not the subject of garnishment under our statute. That personal chattels outside of the state, which, if within the state could be seized by attachment or execution, were not intended to be covered by the statute, is, we think, evident.

The attachment of the debtor's property before judgment has always been considered a harsh remedy in this state, but that writ can only reach the property of the debtor within the state. R. S., sec. 2738. The garnishee process is in the nature of an attachment, and was first used to attach the credits of the debtor and apply them to the payment of his debts, but it has been extended in this state so

as to attach, without actual seizure, the personal property and real estate of the debtor in the possession or under the control of third persons, so as to apply such property to the payment of his debts. We do not feel called upon to give this statute, which is in its nature a harsh remedy, a construction which would give the courts under it the highest powers of a court of chancery, viz., the power to compel a debtor to surrender his property held within a foreign jurisdiction, to be applied to the payment of his debts within this state. If under this statute the circuit court can exercise this power, then any justice of the peace may, for the same language is used in the statute which gives the power to justices' courts over the garnishee process that is used with respect to circuit courts, except that it leaves out the words "or real estate." As to personal property the language is the same. R. S., sec. 3716.

The statutes of this state, considered together and as one system, clearly indicate that the personal property which may be arrested in the hands of a garnishee must be within the state, so that it may be seized and sold to satisfy any judgment obtained against the principal debtor. Sec. 2762, R. S., relating to the proceedings in the circuit court, says: "If the answer disclose any money, credits, or other property, real or personal, in the possession or under the control of the garnishee, the officer having a writ of attachment or an execution, if any, may levy upon the interest of the defendant in the same; otherwise the garnishee shall hold the same until the order of the court thereon." The last clause of the section evidently relates to the cases where the garnishee is summoned in an action not commenced by attachment, and in such cases he must hold the property to await the judgment of the court in the principal action. The act giving jurisdiction of the proceedings to justices of the peace, provides as follows: "The justice shall enter an order in his docket, requiring the garnishee, within ten days, to

pay or deliver to the justice such property, or the amount of such indebtedness, or so much thereof as may be necessary to satisfy such judgment; . . . and all property and effects, except money delivered to the justice, shall be by by him ordered to be sold on the execution against the defendant." R. S., sec. 3725.

These provisions clearly indicate that the personal property to be reached in the hands of a garnishee is such as would be subject to seizure by the writ of attachment or execution, if they were in the possession of the principal debtor. It is unnecessary to intimate the difficulties and hardships which would result from the enforcement of a rule against garnishees compelling them to deliver up to the processes of the courts of this state any property they may have under their control, belonging to the principal debtor, situated in another state. The difficulty in the case at bar might not be great, because the property, although in fact out of the state when the garnishee summons was served, was not as distant from the place where the court was held, which issued it, as it might have been within the state. But the rule, if established, must be general, so that if property just beyond the line of the state may be reached, then property in Maine, Louisiana, or California, or in any foreign country, may also be reached and held. The difficulties and injustice of enforcing such a rule are apparent. The only case cited by the learned counsel for the respondent in which any court has held that personal property out of the state, in which the garnishee process was issued, could be reached and held by it, is *Childs v. Digby*, 24 Pa. St., 23. That case was disapproved as bad law by the same court in *Penn. R. R. Co. v. Pennock*, 51 Pa. St., 244. The position taken by us upon this question is approved by the Pennsylvania court in the case last cited, and also in the following cases: *Western R. R. v. Thornton*, 60 Ga., 300; *Sutherland v. Second Nat. Bank*, 78 Ky., 250; *Wheat v. P. C. & Ft. D.*

*R. R. Co.*, 4 Kan., 370, 378; *I. C. R. R. Co. v. Cobb*, 48 Ill., 402; *Lawrence v. Smith*, 45 N. H., 533; *Tingley v. Bateman*, 10 Mass., 343, 346; *Clark v. Brewer*, 6 Gray, 320; *Young v. Ross*, 11 Foster, 201.

It is urged by the learned counsel for the respondent that the garnishee should be held for property in his control out of the state, because the court could enforce its order against the person of the garnishee, over whom it has jurisdiction, in like manner as a court of equity sometimes enforces a contract between the parties to the action to convey lands situated in another state. Our answer to that argument is, as stated above, that it is clear that the legislature did not intend to confer these high equity powers upon the courts having jurisdiction of the garnishee process. It is unnecessary, therefore, to discuss the question of the power of the legislature to confer upon the courts of this state the authority to appropriate the personal property or real estate of a debtor, situate in another state or foreign country, to the payment of his debts in this state.

3. Another question of very great importance to all common carriers, and especially to all railroad companies within this state, was very fully discussed by the learned counsel for the respective parties orally and in their briefs; and, although not absolutely necessary to a determination of this appeal, we deem it highly proper to consider it in this case. The exact question is this: Can a common carrier be held liable, upon a garnishee summons, for personal chattels in his possession in actual transit at the time the summons is served?

We think that public policy, and the proper discharge of the duties imposed upon common carriers of personal chattels placed in their possession for carriage, requires that this question should be answered in the negative; and we think so, notwithstanding the very broad language of the statute above quoted. That railroad corporations, as well

as individuals and other corporations, are subject to the garnishee process must be admitted, and that in proper cases they must be held to respond as individuals. This court has so held as to debts due from the railroad company to the principal debtor in the action. The nature of the possession and control which the railroad company has of and over personal property in actual transit; the interruption of business, and the general inconvenience which must necessarily result from holding such property the subject of the garnishee process,— it appears to us are amply sufficient to justify us in making such property an exception to the general rule, in the absence of any positive declaration of the legislature subjecting such property to the process. Notwithstanding the general language used in statutes of this kind, the courts have established many exceptions, depending upon the nature and character of the possession and control which the person or corporation proceeded against has over the property in his or its possession. This court has established many exceptions, where it is admitted the language of the statute was broad enough to include the corporations or officers excepted by the courts. *Burnham v. Fond du Lac*, 15 Wis., 193; *Hill v. La C. & M. R. R. Co.*, 14 Wis., 291; *Buffham v. Racine*, 26 Wis., 449; *Merrell v. Campbell*, 49 Wis., 535. So this court, as well as others, has made exceptions, and taken cases out of the general words of the statute on account of the nature of the indebtedness of the garnishee which is sought to be reached by the garnishee process. Thus, where the debt sought to be reached is in the form of a negotiable promissory note or bill of exchange, the debtor is not held chargeable as garnishee except under a showing of facts which will clearly protect him against the actual holder of the note or bill. *Carson v. Allen*, 2 Pin., 457; *Davis v. Pawlette*, 3 Wis., 300; *Mason v. Noonan*, 7 Wis., 609; *State ex rel. Rogers v. Burton*, 11 Wis., 50; *Beck v. Cole*, 16 Wis., 95. These cases are abundant to

show that where the public good requires it, or when it is necessary to protect the rights of the garnishee, the courts have not hesitated to say that the general words of the statute should be construed not to include the party or the particular subject matter of the controversy.

The supreme court of Massachusetts, in the case of *Staniels v. Raymond*, 4 Cush., 314, held that a person might have the possession or control of the property of another for the time being, and yet not be subject to the trustee process of that state. In that case the defendant was sought to be charged as trustee as to a cow he had in his possession under the following circumstances: He had been negotiating with the owner for her purchase, and had taken her into his possession for trial; but before the trustee process was served he had notified the owner he would not take her, and at the request of the owner she remained in his possession at the time the process was served. In deciding that he was not liable to the process, the court, after stating that there was some doubt whether the possession of the defendant was within the literal construction of the statute, say: " But, if it were so, such a construction would be unreasonable and inadmissible, for thereby an innkeeper would be chargeable with the property of a traveler which he might have in his possession for the shortest time; and the hirer of a horse for a ride might be charged as trustee." And again, after showing that courts are bound to give such a construction to a statute as would be reasonable, they say: " We think it never could have been the intention of the legislature that the mere possession of property by a party having no claim to hold it against the owner, should render him liable as trustee, and thereby subject him to trouble and expense in answering to a claim in which he has no interest. Such a construction of the statute would be prejudicial in very many cases, and cannot be admitted." The reasoning of the court in this case applies with great force to the common

carrier, especially the carrier by railroad. If he is made a garnishee for property in actual transit, he is not only made a party to a controversy in which he has no interest, and is necessarily put to trouble and expense for which he can get no compensation, but he is also necessarily interfered with and interrupted in the prompt carriage of the goods of many others having no connection with the controversy. We think when the legislature gave the garnishee process in an ordinary action upon contract before judgment, and where there is no allegation of any fraudulent attempt on the part of the debtor to defraud his creditors, it could not have contemplated that it would be used for the purpose of interfering with the business of railroads and other common carriers in the prompt performance of their duties to the public; and when the plaintiff, upon allegations of fraud, proceeds by writ of attachment against the property of his debtor, he should take the risk of the actual seizure of the defendant's property if found in the hands of the carrier, and assume the risk as well as the expense of establishing the ownership of the property by the defendant, and not be allowed to cast that risk and expense upon the carrier by summoning him as garnishee.

There are but few decisions of the courts upon this subject. We have been referred by the learned counsel for the respondent to the case of *Adams v. Scott*, 104 Mass., 164, as sustaining the right to hold, by garnishee process, goods in the hands of a common carrier while *in transitu*. It must be admitted that the court so held in that case. It was a very plain case. There was no dispute about the ownership of the property, and the property at the time of the service seems to have been not in actual transit, but in the hands of an agent of the company in the city of Boston. Still it is quite plain that the court held that the fact that the property was in the hands of a common carrier in transit, was no objection to the proceedings. This is the only

case we have found which sustains the doctrine contended for by the respondent. On the other side, the learned counsel for the appellant have cited us the cases of *I. C. R. R. Co. v. Cobb*, 48 Ill., 402, and *M. C. R. R. Co. v. C. & M. L. S. R. R. Co.*, 1 Bradw., 399, which sustain the contrary doctrine, and hold that chattels in the hands of a common carrier *in transitu*, are not the subject of garnishment. The doctrine of these cases has some support in the cases of *Penn. R. R. Co. v. Pennock*, 51 Pa. St., 240, 254, and *Western R. R. v. Thornton*, 60 Ga., 300. We approve what was said by Chief Justice BREESE in the case of *I. C. R. R. Co. v. Cobb, supra*, about the injustice of holding the common carrier as garnishee in respect to property in actual transit, viz.: "They are obliged, under ordinary circumstances, to carry all that shall be delivered to them, and they discharge their duty by carrying and delivering according to the contract. It is not their business, nor is it their interest, to know to whom the various articles belong, nor should it be required of them that conflicting claims to the property intrusted to them should be adjusted through controversies in which they have no interest, and the burden, annoyance, and expense of which they must bear. When the goods are in the depot of a railway company in the county in which the attachment proceedings are instituted, there could, perhaps, be no objection to such process; but on this point we express no definite opinion. When the property has left the county, and is in transit to a distant point, though on the same line of railway, it would be unreasonable to subject the company to the costs, vexation, and trouble of such process, merely because it had received to be carried that which the law compelled them to receive and carry."

Whether goods in a depot of a railway company in this state, either before transit or after, and awaiting delivery

after their arrival at the place of delivery, would be subject to the garnishee process, we do not determine.

For the reasons stated, the judgment of the circuit court must be reversed.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with instructions to that court to enter a judgment upon the special verdict in favor of the garnishee defendant.