HAZEN S. PINGREE ET AL. v. THE DETROIT, LANSING & NORTHERN RAILROAD COMPANY.

*Common carriers—Authority to ship goods—Lien for services—Seizure of consigned property under legal process—Liability of carrier.*

1. A common carrier receiving property from a person not authorized to direct its shipment has no lien for his services, and no right to retain the property. *Fitch v. Newberry,* 1 Doug. 1.

2. The seizure by a sheriff, upon *regular* process, of property in the hands of a common carrier for shipment, exonerates it from liability for non-delivery.

   So *held,* where mortgagees replevied the pledged property from the mortgagors' vendee, and delivered it to a railroad company for shipment, after which it was attached by creditors of the mortgagors, and the mortgagees brought suit against the carrier for its non-delivery.

3 Whatever may be a carrier's duty to resist a *forcible* seizure without process, he cannot be compelled to assume that *regular* process is *illegal,* and to accept all the consequences of resisting officers of the law. If he is excusable for yielding to a public enemy, he cannot be at fault for yielding to *actual* authority what he may yield to *usurped* authority.

Error to Wayne. (Chambers, J.) Argued January 19, 1887. Decided June 9, 1887.

Case. Plaintiffs bring error. Affirmed. The facts are stated in the opinions.

*Isaac Marston,* for appellants.

*Charles B. Lothrop,* for defendant.

CAMPBELL, C. J. This case presents a single question on facts found.

Plaintiffs had a chattel mortgage against Francis M. and Myron C. Butts, which was made on August 4, 1886. The

next day the two Butts made a transfer of the property to one Steere. Plaintiffs replevied from Steere, and on August 12 shipped the goods by defendant's railroad from Edmore, directed to Detroit, taking the usual bill of lading. On the same day the goods were taken by the sheriff at Stanton, on an attachment against said F. M. and M. C. Butts, in favor of John W. Fuller and others. Defendant notified plaintiffs of this seizure. Plaintiffs now sue defendant for not delivering the goods at Detroit. The question is whether the seizure by the sheriff exonerated defendant from such delivery. The court below held that it did.

There seems to be a little apparent conflict between the cases on this question, but there can be no doubt where the rule of justice lies. If the carrier could rely against all the world upon the right of the consignor to intrust him with possession, then it would be reasonable to hold him estopped from questioning that title. But there is no authority for such immunity. The true owner may take his property from a carrier as well as from any one else. If a carrier gets property from a person not authorized to direct its shipment, he has been declared by the Supreme Court of this State to have no lien for his services, and no right to retain the property. *Fitch v. Newberry*, 1 Doug. 1. There is no sense or justice in enabling a consignor to compel a carrier, at his peril, to defend a title that he knows nothing about, and has no means of defending unless the consignor gives it to him. In the present case the attachment was against plaintiffs' mortgagors, and was regular. It must have been levied on the claim that plaintiffs had no right to the goods. Defendant could not have resisted the seizure without incurring the risk of serious civil, and perhaps criminal, liability; and, if plaintiffs' claim is correct, this must have been done at defendant's own risk and expense.

This precise question was decided in favor of the carrier in *Stiles v. Davis*, 1 Black, 101, upon the ground that defend-

ant was not required to resist the sheriff, and could not properly do so.   This rule has been adhered to by the United States Supreme Court, and followed to a considerable extent. It is the only rule compatible with public order.   A carrier must otherwise resist the officer, or find some one who will swear out a replevin, which a carrier usually has not knowledge enough to justify.   If the carrier cannot call on the consignor to defend, and must take the risk and the loss, his position would be one of hopeless weakness.   If he declines to accept custody of goods, he runs the risk of an action; and if a wrongful holder, by doubtful title, or even by theft, compels him to receive the consignment, he can get the value from the carrier who has had them seized by the true owner, unless the carrier has means of proof, that he never can be presumed to have, of the lack of interest in the shipper.

Whatever may be a carrier's duty to resist a forcible seizure without process, he cannot be compelled to assume that regular process is illegal, and to accept all the consequences of resisting officers of the law.   If he is excusable for yielding to a public enemy, he cannot be at fault for yielding to actual authority what he may yield to usurped authority.

I think the judgment should be affirmed.

CHAMPLIN and MORSE, JJ., concurred.

SHERWOOD, J. (*dissenting*).   This is an action against the defendant, as common carrier, to recover damages for its failure to carry safely, and deliver in Detroit, a quantity of boots and shoes.

The cause was tried in the Wayne circuit, before Judge Chambers, without a jury.   The parties, by their attorneys, agreed upon the facts, and in accordance therewith they were found by the court, and upon which the learned judge found, as a question of law, the plaintiffs were not entitled to recover, and judgment was entered against plaintiffs for costs.   The case is now before us, on error, for review.

The following is the substance of the material facts found by the court, viz. : On the twelfth day of August last, plaintiffs delivered to defendant, at Edmore, certain goods, to be delivered to plaintiffs at Detroit.   Defendant carried the same safely to Stanton, Montcalm county; and, on the arrival of the goods there, they were seized and taken from defendant by the sheriff of Montcalm county, as the goods of F. M. Butts *et al.*, by virtue of a writ of attachment issued out of the circuit court for that county in a suit wherein J. W. Fuller *et al.* were plaintiffs, and Francis M. Butts *et al.* were defendants, and to which suit plaintiffs were in no manner parties.    The writ under which the sheriff acted was a good and valid one, and the seizure made by him was without the consent, connivance, or procurement of defendant.  · Defendant at once notified plaintiffs of the seizure of said goods and the return-day of said writ, to which plaintiffs made no reply except to offer to assign to defendant whatever claim they might have against the sheriff.

The defendant was a common carrier of goods at the time it received the plaintiffs' property for transportation, and had no knowledge of the true owner of the goods, or of the title or possession of the same, prior to the time of the delivery to it.    The value of the goods was $899.85.

The said Butts delivered to Pingree & Smith, above-named plaintiffs, to secure payment of $801.78, a bill of sale of a stock of goods, including those in question, on the fourth day of August aforesaid, and thereafter, on the fifth day of August, Butts claimed to have sold the stock to W. C. Steere, of Stanton, who took possession of the same.

The plaintiffs, claiming the sale to Steere to be fraudulent, brought replevin in the Montcalm circuit against him for sufficient of said goods to satisfy their claim.    Said writ was valid, and the goods taken thereon were delivered to the plaintiffs, and were the same goods delivered by them to the defendant for carriage from Edmore to Detroit.

On the arrival of the goods at Stanton, the goods were attached by the sheriff of Montcalm county, as the property of the Butts, by J. W. Fuller *et al.*, as plaintiffs in the writ, and in which suit the plaintiffs herein were not parties; and the goods in question were taken upon this writ by the sheriff from the defendant. Defendant has never since become repossessed of the goods, nor have they ever been tendered back to defendant.

Upon the foregoing facts the plaintiffs claimed they were entitled to recover. The court held otherwise.

This suit was commenced on the fifteenth day of September, 1886, and about a month after the plaintiffs claim the goods should have been delivered to them by the defendant, and was tried and judgment rendered in December following. What became of the attachment suit does not appear, or that the plaintiffs therein had any title whatever to the goods in question. 'The plaintiffs in this suit had possession of the property, and claimed to be the owners thereof, and as such gave it into the custody of the defendant carrier for transportation to Detroit. It was its duty to carry the goods, and deliver them at its depot in that city to the plaintiffs, or to their order   The common-law liability of a carrier of goods is fixed and definite, and is the liability recognized in this State. Carriers of freight are liable, whether they are careful or not, for any act of omission or damage not caused by the act of God or of the public enemy. *Michigan Cent. R. R. Co. v. Ward,* 2 Mich. 538; *Michigan Cent. R. R. Co. v. Hale,* 6 Id. 261; *McMillan v. Michigan Southern & N. I. R. R. Co.,* 16 Id. 79; *Grand Rapids & I. R. R. Co. v. Huntley,* 38 Id. 546.

The statutes of our State subject the defendant receiving freight for transportation, to the liability of common carriers; and the company is not permitted to lessen that liability, except by a written agreement to that effect signed by both parties. How. Stat. § 3328; *McMillan v. Michigan*

*Southern & N. I. R. R. Co.*, 16 Mich. 79; *Michigan Southern & N. I. R. R. Co. v. Shurtz*, 7 Id. 515; *Buckley v. Great Western Ry. Co.*, 18 Id. 121 ; *Cleveland & T. R. R. Co. v. Perkins*, 17 Id. 296.

While the carrier is in possession of the consignor's goods he is clothed with all the power and authority to protect and preserve them that the owner himself would have, and, while the goods are in transit, it is his duty to use all the means that human agency can command to give such protection; and it is only after such means are exhausted, can he be heard in his defense against the liability the common law casts upon him if injury or damage ensue.

In this case the court finds that the goods in question were taken by the sheriff of Montcalm county without the consent, connivance, privity, or procurement of the defendant, and that it immediately notified the plaintiffs of the seizure; but this is not enough to exculpate the defendant from liability, under the facts found. There is no pretense that the writ under which the sheriff acted ran against the defendant, the consignors, or this property, nor yet against the latter's vendor of the goods. It does not appear that he was directed by the writ to levy it upon any specific property in the custody of defendant or of the consignors. *Prima facie*, he had no more right to enter the car and take these goods than had any other trespasser. It appears from the record that the defendant knew nothing in regard to the title to the property more than what it obtained from the consignors; and it nowhere appears that the defendant was informed by the sheriff, or any other person, upon what ground the plaintiffs in the writ, or himself, claimed the right to seize the property. I still adhere to the doctrine stated in *Gibbons v. Farwell*, 63 Mich. 344, and, so far as it has any bearing upon this case, it is against the defendant.

Chief Justice CAMPBELL, in *Grand Rapids & I. R. R. Co. v. Huntley*, 38 Mich. 546, says:

"The common carrier's liability, therefore, does not arise from negligence or want of care.    It arises from their failure to make an absolutely safe carriage and delivery which they insure by their undertaking."

And in the case of *Michigan Cent. R. R. Co. v. Hale*, 6 Mich. 261, it is said:

"In the absence of any contract, the law imposes upon the carrier the extraordinary liability of insurer against all loss, unless occasioned by the act of God or the public enemy; and this becomes the terms of transportation, and may be called the contract of the parties, arising immediately upon the delivery of the property for carriage."

The sheriff who took this property from the defendant had no more right, so far as this record shows, to take the same, than any other citizen of Montcalm county.    The defendant suffered the property to be taken from the carrier by a trespasser, and this brings the case clearly within the liability of the undertaking, and entitles the plaintiffs to a recovery.

The judgment at the circuit should be reversed, and a new judgment entered for the plaintiffs for the value of the property as found by the court, with costs of both courts.