## KOHN v. RICHMOND, &c., RAILROAD COMPANY.

1. COMMON CARRIERS—SURRENDER TO RIGHTFUL OWNER.—Where goods were
received by a common carrier for transportation, and their possession then
demanded by the agent of the shipper's mortgagee, after condition broken,
but the carrier declined to surrender the possession, and after retaining
them until next day then shipped the goods to their destination, the car-
rier is not liable to the mortgagee for a conversion of the goods.

2. CHATTEL MORTGAGES—CONSTABLE—AGENT.—The appointment of a consta-
ble to seize goods covered by a chattel mortgage, after condition broken,
does not constitute the constable anything more than an agent of the mort-
gagee; and an effort by him as such agent to seize the goods is not an
attempted execution of legal process.

3. ESTOPPEL.—The presence and silence of the mortgagor when demand was
made by the mortgagee upon the common carrier for the goods, and the
demand was refused, were not such an admission by the mortgagor of the
mortgagee's ownership, as made it the duty of the carrier to yield to such
demand.

MR. JUSTICE POPE *dissenting*.

Before WALLACE, J., Newberry, November, 1890.

This was an action by S. J. Kohn & Co. against the Richmond & Danville Railroad Company, to recover damages for the wrongful conversion of personal property. The trial justice before whom the action was tried gave judgment for twenty-six 29–100 dollars in favor of plaintiffs, and on appeal to the Circuit Court, this judgment was affirmed. Defendant then appealed to this court.

*Mr. J. F. J. Caldwell*, for appellant.

*Mr. Geo. S. Mower*, contra.

November 18, 1892.   The opinion of the court was delivered by

MR. CHIEF JUSTICE McIVER.  The plaintiffs bring this action to recover damages for the conversion of certain personal property, alleged to belong to plaintiffs. The facts may be briefly stated as follows: On the 13th of October, 1887, one Clendenning delivered to the agent of defendant company at Prosperity the property in question, consisting of a lot of household goods, to be shipped by defendant's train to Laurens. After said agent had received and receipted for said goods, defendant's agent was notified by an agent of plaintiffs not to ship said goods, as they belonged to plaintiffs under a mortgage given by Clendenning to plaintiffs, the condition of which had been broken. The goods were, however, placed on the cars, and the cars sealed. Soon after this, and just before the arrival of the train for Laurens, one Hair, a constable, appeared at the depot with the mortgage, upon which an endorsement had been made by a trial justice, purporting to authorize said Hair to take possession of the goods, and demanded them from defendant's agent, who refused to deliver them upon the ground that the paper was not sufficient—"that I ought to have had a distress warrant." Clendenning was present at the time, but so far as appears from the evidence, neither said nor did anything.

The goods remained at the depot, in the car in which they had been placed the evening before, until 1 o'clock the next day, when they were sent on to Laurens, no further steps having in the meantime been taken by plaintiffs to obtain possession of said goods. The mortgage above spoken of was given by Clendenning to the plaintiffs to secure the payment of a note which fell due on the 1st of May, 1887.

The plaintiffs having obtained judgment for the value of the goods, defendant appeals upon the several grounds set out in the record, which need not be specifically stated, as the case turns upon the single question, whether a common carrier who has received goods for transportation from one person, and given him a bill of lading therefor, is bound to surrender them upon demand to a third person who claims to be the true owner thereof, under pain of being liable to an action for the conversion of said goods at the suit of such third person.

It is conceded that, under the stringent rule of the common law, a common carrier is liable as an insurer for goods committed to his charge for transportation, and nothing but the act of God or the public enemies will excuse him for failure to deliver the goods at their destination to the person to whom he has contracted to deliver them, the consignee. Under this rule it is very obvious that the carrier would be liable to his bailor, even if the goods were taken from his possession by process of law, and much more so if he voluntarily delivered them to the true owner; for this would not be either the act of God or of the public enemy. But it is claimed, and we think justly, that this stringent rule has been modified so as to excuse the carrier from liability, where the goods have been taken from his possession by process of law; provided, the carrier gives prompt notice of such seizure to his bailor; for, as it is well put by Campbell, C. J., in *Pingree* v. *Detroit, &c., R. R. Co.*, 66 Mich., 143, reported, also, in 11 Am. St. Rep., 479: "If he is excusable for yielding to a public enemy, he cannot be at fault for yielding to actual authority what he may yield to usurped authority." See, also, *Stiles* v. *Davis*, 1 Black, 101, and the same doctrine is, at least, impliedly recognized, though

the point was not distinctly raised in our own case of *Faust* v. *South Carolina R. R. Company*, 8 S. C., 118.

It is also contended that the rule is still further modified so as to excuse the carrier from liability to his bailor for the non-delivery of goods entrusted to him for transportation, if he can show that he has delivered the goods to a third person, who was the true owner, and entitled to the possession thereof; and the case mainly relied upon to establish this proposition is *The Idaho*, 93 U. S., 575, though there are cases which have been decided in several of our sister States, recognizing the same doctrine. In our own State, however, we have no case, so far as we are informed, which recognizes this modification of the rule as to a carrier's liability. It is true, that the case of *Robertson* v. *Woodward*, 3 Rich., 251, does seem to recognize the doctrine that an ordinary bailee—not a common carrier—may dispute the title of his bailor in an action of trover brought by the latter, by showing that his bailor had sold the subject of the bailment, before the bailment arose, and that defendant was authorized to defend the action for the benefit of the purchaser. But it seems to us somewhat difficult to reconcile that case with the previous case of *Manning* v. *Norwood*, 2 Mill Con. R., 374.

Be that as it may, however, and assuming, for the purposes of this case, that the stringent rule of the common law as to a carrier's liability has been thus further modified, as contended for by respondents, the question still remains, whether the rule thus modified applies to this case. It will be observed that the cases which establish or recognize this modification of the rule only go to the extent of holding that a common carrier *may* deliver the goods entrusted to him for transportation to the rightful owner upon his demand; and if he does, he may defend himself against an action brought by his bailor to recover damages for the non-delivery according to the contract of bailment, by showing that he has delivered the goods to the rightful owner; but none of them go to the extent of holding that he is *bound* to deliver them to one who demands them as rightful owner, unless it be the case of *Wells* v. *American Express Company*, 56 Wis., 23; s. c. 42 Am. Rep., 695. In that case, a package of money was entrusted to the carrier, to be delivered

to Wells & Cartwright.    When the package addressed to Wells
& Cartwright reached its destination, the money was demanded
by Wells alone, he claiming to be the sole owner, and that
Cartwright had no interest in it; to which Cartwright, being
present, assented verbally, though "there was no assignment
by Cartwright of his apparent interest in the package to Wells,
and no written order by Cartwright to deliver to Wells, and no
offer of any receipt or acquittance from both."    The defendant
refused to deliver the money to Wells alone, and insisted, also,
that the money had been subjected to garnishee proceedings
against Cartwright.    Wells then brought his action, not upon
the bill of lading or express receipt, but for money had and
received ; and the court held that, "irrespective of the garnish-
ment," the plaintiff, having established his individual right to
the money, was entitled to recover.    The authorities cited by
the learned judge, while they do establish the doctrine that a
common carrier *may*, with safety, deliver to the rightful owner,
do *not* establish the doctrine that he is *bound* to do so ; and his
assumption that the one follows from the other is not, in our judg-
ment, well founded.    In addition to this, the action in that case
was for money had and received, which does not necessarily
imply a tort on the part of the defendant, while here the action
is for the conversion of the goods, which does involve the idea
of tort.    Again, in that case, it appeared that Cartwright, one
of the persons named as consignee, was not only present when
Wells, the other consignee, demanded the money, claiming it
as his individual property, but actually assented to such claim,
and hence the carrier had no excuse for refusing to comply with
the demand.

It seems to us that the whole case turns upon the question,
whether a carrier, resting under very stringent obligations to
his bailor, is bound to assume the burden, where a third person
makes a demand upon him for goods entrusted to him for trans-
portation, not enforced by legal process, of showing, not only
that such third person is the rightful owner, but is also entitled
to the immediate possession of the goods.    It seems to us that
common justice would require that such burden should be as-
sumed by the claimant, who is most likely to have the means of

meeting it, and not upon the carrier, who cannot be supposed to know anything about the real ownership of the goods, and has a right to assume that the person from whom he received possession of the goods was such rightful owner, possession of personal property being evidence of title. The most that could be properly required of the carrier would be to hold the goods, notifying his bailor of the demand which had been made upon him, and let the claimant contest with the bailor the question of ownership.

Under these views, we do not think that the judgment below can be sustained. The goods were not seized or demanded under any legal process. The fact that the person selected as the agent of plaintiffs to enforce their mortgage claimed to be a constable, cannot affect the question; for even where a mortgage of personal property is placed in the hands of the sheriff, with instructions from the mortgagee to seize and sell the mortgaged property, the sheriff does not act officially, but merely as the private agent of the mortgagee. *Robins* v. *Ruff*, 2 Hill, 406.

It is claimed, however, that the bailor, Clendenning, being present when the goods were demanded of the defendant's agent by the agent of the plaintiffs, and saying nothing, was an admission that plaintiffs were the rightful owners and entitled to the immediate possession of the goods, and, therefore, defendant had no excuse for refusing to comply with the demand. We can not take that view. We do not see what obligation rested upon him to interpose in the colloquy between the agents of plaintiffs and defendant. He delivered the goods for shipment to the defendant, and held its bill of lading, obligating defendant to deliver them according to its terms, and there was no occasion for him to speak. If he had stood silently by, and allowed the defendant to deliver the goods to plaintiffs, claiming to be the rightful owners, without protest or objection, we can very well see how he might have been estopped from subsequently claiming them from defendant; but we do not see how his silence, when plaintiffs were making an unsuccessful demand on defendant, could possibly affect the question involved here.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded for a new trial.

MR. JUSTICE McGOWAN. The amount involved in this case is not large, but the principle is important. After careful consideration, it seems to me, that when a common carrier is entrusted with property for transportation, his first responsibility is to the person who has entrusted him with the property ; and, upon claim of the property by a third party, that he should not be required, at his risk, *to judge* between the parties as to the ownership of the property. He should, however, always and at once yield to the force of legal process, which intervenes and takes the property, thus relieving the carrier from the responsibility of being *judge* in the matter. I have not been able to satisfy myself that the paper presented to the official of the railroad in this case was, in the proper sense, legal process. "It seems to have been a simple mortgage of personal property, after condition broken, but there was about it none of the usual *indicia* of legal process, such as a summons, warrant, writ, or seal of the court. It did not appear that there had been any judicial determination of the matter, and the paper was in the hands of one who, on the occasion, was acting merely as the agent of the mortgagees. For this reason I concur in the opinion of the Chief Justice.

MR. JUSTICE POPE. I dissent, and will file a dissenting opinion.

Judgment reversed.