THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY v. THE JORDON STOCK-FOOD COMPANY.

No. 13,117.   (72 Pac. 533.)

SYLLABUS BY THE COURT.

1. TITLE AND OWNERSHIP—*Replevin from Common Carrier.* It is the duty of a common carrier to surrender to the owner, upon demand, personal property held by it in its warehouse awaiting transportation under a contract of carriage with a person who had wrongfully obtained possession of it from the owner.

2. ——— *Railroad Company—Pleading.* In an action of replevin brought by the owner of personal property against a railroad company which has received it for transportation from a person wrongfully in possession, it is not necessary to allege in the petition that the defendant's railroad runs into, or through, the county in which the suit is brought.

Error from Shawnee district court; Z. T. HAZEN, judge. Opinion filed May 9, 1903. Affirmed.

*A. A. Hurd,* and *O. J. Wood,* for plaintiff in error.
*Garver & Larimer,* for defendant in error.

The opinion of the court was delivered by

BURCH, J.: Certain goods were in the possession of a commission merchant for sale on the owner's account. A person without title or authority procured them to be consigned to him at Topeka, *via* the railroad of the plaintiff in error, at which place they were unloaded and placed in the railroad company's warehouse. The interloping consignee then directed the goods to be shipped to a point beyond the state, paid the freight, and was given a bill of lading. Before the goods were reshipped an authorized agent and attorney of the owner discovered the goods, claimed them for his principal, and demanded possession of them from the carrier. The demand not having been complied with, the owner brought an action of replevin for his property, but obtained no order for its delivery to him. Three days later the carrier forwarded the goods in accordance with the shipping directions it had received and its bill of lading previously issued. The carrier was ignorant of who the true owner was, except as advised by the demanding agent, and was ignorant of that person's authority, except as disclosed by his own representations. What were the right of the owner and the duty of the carrier under these circumstances?

The position of the railroad company was one of great hazard and embarrassment. It was liable to be mulcted in damages if it wrongfully refused to carry and deliver the goods under its contract with the shipper, and it was without any adequate means or opportunity of knowing definitely who the true owner was. The law, however, must always aid the true owner in the recovery of his property, and he cannot be deprived of it by means of any contract re-

lation between a wrong-doer and the carrier. When, therefore, the owner did appear and demand his goods he was entitled to their immediate delivery, and it was the duty of the possessor to make it. The solving principle to be applied to such a state of facts is expressed in the following texts, where the English and American cases are collated :

"The real owner of goods in the hands of a carrier may, at any time before delivery to the consignee, demand possession of them, and the carrier is bound to respect this right without regard to how the goods are marked or to whom or by whom they may have been consigned. The general rule that a carrier must deliver in accordance with the address on the shipment or with the terms of the bill of lading is subject to the exception that the true owner of the property may enforce his right to its possession as against the consignor, consignee or carrier whenever he sees fit to do so before delivery. His rights are paramount to the claims of all others." (5 A. & E. Encycl. of L., 2d ed., 196.)

"The carrier is bound to respond to the demand of the real owner for possession of his goods, and in doing so he does not render himself liable to one who, having fraudulently or otherwise unlawfully obtained possession of them, has delivered them to the carrier for transportation. And the real owner may maintain an action against the carrier for refusal to deliver goods to which he is entitled." (6 Cyc. 471.)

"It is no conversion by a common carrier or other bailee who has received property from one not rightfully entitled to possession, to deliver it in pursuance of the bailment, if this is done before notice of the rights of the real owner. After such notice he acts at his peril. A delivery to the party entitled to the possession will be a protection to him, and he may defend in the right of such party before delivery." (Cool. Torts, 2d ed., 534.)

The plaintiff in error cites in opposition to this rule

the case of *Kohn v. Railroad Company*, 37 S. C. 1, 16
S. E. 376, 24 L. R. A. 100, 34 Am. St. Rep. 726, the
syllabus of which reads :

"Where goods were received by a common carrier
for transportation, and their possession then demanded
by the agent of the shipper's mortgagee, after condi-
tion broken, but the carrier declined to surrender the
possession, and after retaining them until next day
then shipped the goods to their destination, the car-
rier is not liable to the mortgagee for a conversion of
the goods."

In a monographic note to the report of this case in
34 American State Reports, it is incidentally correctly
appraised in the following statement of the law :

"There is no doubt, except in South Carolina, that
the true owner of personal property may enforce his
right to it as against the consignor or consignee, or
the carrier, or other bailor or bailee, whenever he
sees fit to do so, before its delivery to the consignee,
as directed by the bailor.   Hence, when the true owner
demands the property of the carrier, and the latter
has notice or knowledge of the title of the former, it
is the duty of the carrier to deliver the property at
once to such owner, and his refusal to do so renders
him guilty of a tort, and at once liable to such owner
in an action for conversion."

The district court properly took this view of the
case upon the merits.

Before the trial plaintiff in error objected to the
jurisdiction of the court, for lack of an allegation in
the petition that its line of railroad ran into or through
Shawnee county, basing its contention upon section
4480, General Statutes of 1901, and supporting it by
the cases of *K. C. Ft. S. & G. Rld. Co. v. Burge*, 40
Kan. 734, 19 Pac. 791 ; *St. L. & S. F. Rly. Co. v. By-
ron*, 24 id. 350 ; *Hadley v. C. B. U. P. Rld. Co.*, 22 id.
359.   The statute cited provides :

"An action against a railroad company, or an owner

of a line of mail stages or other coaches, for any injury to persons or property upon the road or line, or upon a liability as carrier, may be brought in any county through or into which said road or line passes."

Plaintiff, however, made no claim for any such injury, and sought to enforce no liability against the railroad as a carrier, and the statute has no application. The cases relied on arose under the stock law of 1874, which expressly provided that recovery should be had in the county where the injury occurred. The liability and the remedy being purely statutory, the pleadings were necessarily required to present the precise cause of action created. No such rule applies to a suit in replevin, which is in no sense local, and may be prosecuted in the same forum as other transitory actions.

Jurisdiction was therefore properly assumed, and the judgment of the district court is affirmed.

All the Justices concurring.