ATCHISON, T. & S. F. RY. CO. v. INTERNATIONAL LAND & INVESTMENT CO.

(Circuit Court of Appeals, Eighth Circuit; November 26, 1917.)

No. 4785.

1. CARRIERS ⬅➡92—CARRIAGE OF GOODS—CONFIRMATION—DEFENSES.

The rule, as commonly stated, that a common carrier is liable in conversion for misdelivery or nondelivery of property intrusted to it for transportation, and that upon the making of an adverse claim and demand by a third person the carrier assumes the risk of correctly deciding between the claimant and the shipper or consignee, has resulted in adding the compulsion of legal process to the exceptions of act of God and public enemies, which is a defense to a carrier's failure to deliver property, and so a carrier will be protected against the shipper or consignee if the property has been seized or taken from its possession by attachment, replevin, or search warrant at the instance of a third person.

2. CARRIERS ⬅➡92—CARRIAGE OF GOODS—CONVERSION.

A carrier should, where property in its possession for transportation is seized or taken from its possession by attachment, replevin, or search warrant, give notice to the shipper or consignee of the proceeding.

3. CARRIERS ⬅➡93—CARRIAGE OF GOODS—CONVERSION—LIABILITY.

Where a carrier decides correctly, and voluntarily surrenders property in its possession for transportation to an adverse claimant, who is in fact the true owner, it is not liable as for conversion of the property.

4. CARRIERS ⬅➡93—CARRIAGE OF GOODS—CONVERSION—WHAT AMOUNTS TO.

Plaintiff, which had owned and used hotel cars in its land business, sold them to a third party, reserving title until the purchase-money notes were paid. Thereafter plaintiff asserted a default. The purchaser, claiming to have paid in full, leased the cars for use in a traveling show business. Defendant railroad company granted the lessee, for a consideration, the use of the spur track near his residence as a space for storage of the cars; the agreement reserving to defendant no power or right of supervision. While the cars were on such storage track, plaintiff made formal demand therefor upon defendant. Thereafter defendant transported the cars for the lessee, and redelivered them to him. Held that, in view of defendant's obligation as a common carrier to transport for any person, defendant was not, despite the commonly stated rule that a common carrier is liable in conversion for misdelivery or nondelivery of property intrusted to it for transportation, and that upon the making of an adverse claim and demand by a third person the carrier assumes the risk of correctly deciding between the claimant and the shipper or consignee, liable, for when the demand was made defendant had no control

over the cars, and when defendant transported them it was not guilty of connivance with the lessee.

Smith, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Nebraska; J. W. Woodrough, Judge.

Action by the International Land & Investment Company against the Atchison, Topeka & Santa Fé Railway Company. There was a judgment for plaintiff, and defendant brings error. Reversed and remanded.

William R. Smith, of Topeka, Kan., and Robert Dunlap, of Chicago, Ill. (Gardiner Lathrop, of Chicago, Ill., and Charles L. Hunt, of Concordia, Kan., on the brief), for plaintiff in error.

George B. Thummel, of Omaha, Neb. (John J. Sullivan and James E. Rait, both of Omaha, Neb., on the brief), for defendant in error.

Before HOOK, SMITH, and CARLAND, Circuit Judges.

HOOK, Circuit Judge. This is an action by the International Land & Investment Company against the Atchison, Topeka & Santa Fé Railway Company for the conversion of three hotel cars. The plaintiff, which had owned and used the cars in its land business, sold them to a third party, reserving title until purchase-money notes were paid. Afterwards it asserted a default and demanded possession from defendant by formal instrument and correspondence. The vendee, claiming to have paid in full, had previously leased the cars to one Evans for use in his traveling show business. In turn the vendee notified defendant that it was the owner and would hold defendant liable if it failed to transport the cars on its order or that of Evans. The plaintiff resided at Omaha, Neb., the vendee at Kansas City, Mo., and Evans at Independence, Kan. After the notices and demands defendant transported the cars for Evans for about three weeks from Independence and from town to town, and then delivered them for him to the Missouri Pacific Railroad at Pittsburg, Kan. Thereafter Evans continued in the control and use of them in his show business in Kansas, Oklahoma, Nebraska, Iowa, Minnesota, and Missouri. There was evidence at the trial tending to show that the conditional sale of the cars was a part of a larger transaction between the plaintiff and its vendee, in the conduct of which the plaintiff received the proceeds for joint account and division, that part of the notes for the cars had been paid by plaintiff's debiting the vendee in their accounts, and that at the time of the controversy there was due the vendee more than enough to pay the balance. The trial court held that to determine whether the remaining notes were so paid involved a complicated accounting, which could not be had in the case on trial. The evidence also showed quite clearly, notwithstanding a mistaken assumption of some of defendant's officials to the contrary, that when plaintiff's demands were made the cars were not in defendant's possession. Evans had caused them to be moved from near Kansas City to Independence. Defendant granted him for a consideration the use of a spur track at the latter place for storage purposes under an agreement of license reserving to itself no power or right of supervision. The cars were there wholly in Evans'

control and at his risk, and at the time of plaintiff's demands the defendant was under no duty of bailment or carriage to any person. The possession of defendant arose after the demands, when it took the cars for transportation on Evans' order. The evidence also showed that defendant endeavored in good faith to perform the duties imposed upon it as a common carrier, without intention to aid either party against the other. The trial court instructed the jury that defendant had committed a conversion and that the only question open was the value of the cars. A verdict and judgment for the plaintiff, and this writ of error by defendant followed.

[1-3] The rule as commonly stated is that a common carrier is liable in conversion for misdelivery or nondelivery of property intrusted to it for transportation, and that upon the making of an adverse claim and demand by a third person the carrier assumes the risk of correctly deciding between the claimant and the shipper or consignee. The result of this is that, though the carrier is without adequate means of information, it will be held in conversion if it errs in its decision. In the statement of the rule it is generally recognized as productive of much hardship to common carriers impartial as between the contending parties and desirous only of discharging the duties imposed upon them by law. It has been suggested as a possible relief that a carrier in such a position might file a bill of interpleader and bring the parties in to settle their own controversy (Hutch. Carr. § 752), but difficulties of jurisdiction, the loss of market, the perishable character of the property, etc., would seem to impair its adequacy. The hardship of the rule has resulted in adding the compulsion of legal process to the exceptions of "the act of God and the public enemies," and it is held that the carrier will be protected against the shipper or consignee if the property has been seized or taken from its possession by attachment, replevin, or search warrant at the instance of a third person. Stiles v. Davis, 1 Black. (66 U. S.) 101, 17 L. Ed. 33; Pingree v. Railroad, 66 Mich. 143, 33 N. W. 298, 11 Am. St. Rep. 479; Robinson v. Railroad (C. C.) 16 Fed. 57; Bliven v. Railroad, 36 N. Y. 403. The carrier should, however, give notice of the proceeding. It is also settled that it will not be held liable, should it decide correctly and voluntarily surrender the property to the adverse claimant who is in fact the true owner. The Idaho, 93 U. S. 575, 23 L. Ed. 978.

[4] Although the rule has been broadly stated as above, its concrete application has almost always been in actions by shippers or consignees against carriers for violation of their contractual obligations. Though generally assumed to apply, it has not often been invoked, as in this case, by a stranger to the transportation claiming adversely. Much of the support for this particular application of the rule consists of dictum in cases in which the question was not involved and the general language of text-writers. It is a broad extension of the liability of an ordinary voluntary bailee to common carriers without allowance for the compulsory character of the duties of the latter or the public interest in unobstructed commerce. That there are some differences between an ordinary bailee and a common carrier as regards liability to third persons is clear. Thus in Bates v. Railroad, 60 Wis. 296, 19 N.

W. 72, 50 Am. Rep. 369, it was said that public policy and the proper discharge of the duties imposed upon common carriers require that they should not be held in garnishment for personal chattels in their possession and in actual transit at the time the writ is served. Of the various cases cited for plaintiff's contention, but two, Shellenberg v. Railroad, 45 Neb. 487, 63 N. W. 859, 50 Am. St. Rep. 561, and Atchison, T. & S. F. R. Co. v. Jordan Stock Food Co., 67 Kan. 86, 72 Pac. 533, are in point. And the latter was an action in replevin, though, because no writ or order of delivery was issued, it may fairly be said to have been equivalent to one in conversion. On the other hand, in Kohn v. Railroad, 37 S. C. 1, 16 S. E. 376, 24 L. R. A. 100, 34 Am. St. Rep. 726, it was held that conversion would not lie upon mere demand; that because of the stringent obligations of a common carrier in respect of transportation, and its difficulties in case of an adverse claim, the demand should be accompanied by legal process. In Nanson v. Jacob, 93 Mo. 331, 6 S. W. 246, 3 Am. St. Rep. 531, the court said:

"Common carriers, by reason of the nature of their business, which imperatively requires them to receive and forward goods, when tendered in the usual course of their business, have long formed an exception to the stringency of general rules in respect to what constitutes, in similar cases, a conversion."

But if the rule for which plaintiff contends be well founded, which we need not determine, we do not think it can be extended to the case at bar. Plaintiff's demands upon the defendant, made when the latter was not in possession or control, amounted to no more than notice of the claim. Obviously the failure to comply at that time did not constitute a conversion. The defendant could not lawfully have taken the cars away from Evans and delivered them to the plaintiff. The fact that they were on wheels and were on a spur track owned by defendant made them conveniently movable, but was not decisive of the question of possession or control. The case would not have been different, had Evans dismantled the cars and put the parts upon a designated portion of the right of way under an agreement like the one he held. Afterwards, with notice of plaintiff's claim and of the claim of the vendee, the defendant transported the cars for Evans and redelivered them to him. It asserted no title in itself; its possession was temporary; it acted in good faith, and did not connive with the vendee or Evans to deprive the plaintiff of its property. In fact the cars were not put beyond the plaintiff's reach. The simple remedy of replevin from Evans was as available after the transportation as before. Giving full force to the incidents held in varying circumstances to constitute a conversion, we do not think sufficient were shown at the trial.

The judgment is reversed, and the cause is remanded for a new trial.

SMITH, Circuit Judge, dissents.