### HENRY BURDITT & *al. versus* HIRAM HUNT & *al.*

If a mortgage be made of all the property "now in the shop occupied by me in said B." and is without date, parol evidence is admissible to show the day of the execution and delivery of the instrument; the description is sufficient to convey the property; and if such mortgage be duly recorded, it is a sufficient compliance with the provisions of Rev. Stat. c. 125, § 32.

If the mortgagor of personal property be in the actual possession, and makes an illegal sale thereof to a third person, a servant of the purchaser, who merely carries the goods from one shop to the other, without any knowledge of the mortgage, or of any claims upon the property but those of the seller and purchaser, is not liable to the mortgagee in an action of trover.

TROVER for certain goods. The plaintiffs, to show title in themselves offered a mortgage from Robert Kellen to them, without date, recorded Feb'y 1, 1842, of "all and singular the goods wares and merchandize, stock, harness work and other articles of every kind and description now in the shop occupied by me in said Bangor." The plaintiffs then introduced the subscribing witness to the mortgage, and proposed to prove by him, that the mortgage was executed and delivered on Feb. 1, 1842. To this the defendants objected, but the testimony was admitted by TENNEY J. presiding at the trial.

It appeared from the evidence, that the property was left in the possession of Kellen, the mortgagor, with authority to sell as agent for the plaintiffs, for cash and in small parcels. The sale of part of these goods by Kellen to Hunt, under which he

claimed, was not within the authority, and the plaintiffs refused to ratify it. The exceptions state, that it was contended on the part of McMullen, the other defendant, that he, as servant of Hunt, ignorant alike of the existence of the mortgage and of the terms of the contract of sale by Kellen to Hunt, and of any circumstances tending to show, that the sale was invalid, was sent by Hunt to bear the articles from Kellen's shop to Hunt's; that as Hunt's servant he received them from Kellen, and deposited them in Hunt's shop, and had no further connexion with them; and that therefore he was not liable to the plaintiffs in this action. The exceptions, also, state, that there was evidence in the case tending to sustain McMullen's position.

The presiding Judge instructed the jury, that the mortgage vested in the plaintiffs title to all the goods in Kellen's shop on the first day of February; and that if Hunt was liable in this action, and McMullen as his servant aided him in removing the goods, then McMullen was liable for all the goods he so removed.

The verdict was for the plaintiffs, and the defendants filed exceptions.

*Rowe* argued for the defendants, and said that the statute, (c. 125, § 32,) requires that all mortgages shall be in writing, and shall be recorded, unless actual possession is taken; or they will be invalid against creditors or purchasers. The record of the mortgage must show what property is conveyed. A reference to a schedule of the property is not sufficient. *Sawyer* v. *Pennell*, 19 Maine R. 167. If the subscribing witness had been referred to, that would have been much less satisfactory than a schedule. The record merely shows, that certain property which was in a shop at some indefinite time was attempted to be mortgaged. It is too uncertain to pass the property.

The paper has no meaning in itself, and on its face is void for uncertainty. 4 Mass. R. 205. If it be said there is an ambiguity, it is a latent one, and cannot be made certain by parol evidence. If the evidence is admissible, it is the witness, and not the writing which conveys the property. The testi-

mony was improperly received. Stark. Ev. Part 4, pages 170, 172, 173.

The action cannot be supported against McMullen. The articles were left by the plaintiffs in the possession of Kellen, and he delivered them to McMullen, to be carried to Hunt's store. He was a mere carrier from one shop to another. This is no conversion by him.

*Robinson,* for the plaintiffs, contended that where there is no date, it is to be presumed that the instrument was executed and delivered on the day on which it was recorded.

The parol evidence was properly admitted. It is always competent to prove the date of any instrument by parol.

Hunt was a wrongdoer, and the other defendant aided him in the commission of the wrongful act; and is therefore equally liable.

The opinion of the Court was drawn up by

SHEPLEY J. — This is an action of trover for goods claimed under a conditional bill of sale made to the plaintiffs by Robert Kellen. It was without date, and was duly recorded on February 1, 1842. A part of the property conveyed is described as all the goods "now in the shop occupied by me in Bangor."

In defence, it is contended that parol testimony ought not to have been received to prove the date of its execution, because the statute, c. 125, § 32, requires, that there should be written evidence of such a sale; and that without such testimony the conveyance would be void for uncertainty. The true date of the execution and of the delivery of a written instrument may be proved, without a violation of the rule, that would exclude all such testimony to contradict or vary the terms of it. *Hall* v. *Cazenove,* 4 East, 477. It does not appear to have been the intention to establish by the statute a different rule respecting mortgages of personal property. The goods, which were in the shop at the time of delivery might be ascertained by testimony, and the description would be sufficient to convey them.

The goods having been left in the possession of the mortgagor with authority to sell them for cash in small parcels, he sold and delivered those, for which this action was brought, to the defendant, Hunt; but in so doing exceeded his authority. There was testimony tending to prove, that the other defendant, McMullen, as the servant of Hunt, was sent for them, and that he received them by the delivery of the mortgagor, and deposited them in Hunt's shop; that he was ignorant of the existence of the mortgage and of the terms of the sale to Hunt; and that he had no other connexion with them.

The jury were instructed, if Hunt was liable, and McMullen, as his servant, aided him in removing the goods, he would be liable for those, which he removed. A servant, who receives goods delivered to him and carries and delivers them to his master, can be held responsible for them in action of trover only, on the ground, that such a removal of them amounts to a conversion. If such a position could be maintained, common carriers and other persons, by receiving goods delivered to them by a person in possession of them, and carrying them to another place would thereby be made liable for their value, if it should afterward be made to appear, that the goods were delivered without authority from the owner. And yet the possession of personal property is, *prima facie,* evidence of ownership. Such a position cannot however be sustained. Conversion is the gist of the action of trover; and conversion is a tort. *Draper* v. *Fulkes,* Yel. 165; *Fuller* v. *Smith,* 3 Salk. 366. When goods come to the possession of a person by delivery or by finding, he is not liable in trover for them without proof of a tortious act. 2 Saund. 47, e. *Mulgrave* v. *Ogden,* Cro. Eliz. 219.

The reception of them by delivery from one, whom he is entitled to regard as the owner, and the conveyance from him to another, to whom they are sent, are not tortious acts. In the case of *Parker* v. *Godin,* 2 Strange, 813, the defendant, who acted as the friend or servant of another, was held liable in such an action, because he pawned the goods in his own name, which had been improperly delivered to him. In the case of

*Perkins* v. *Smith*, 1 Wil. 328, a bankrupt after the act of bankruptcy delivered goods to a servant to be carried to his master, and the servant sold them for his master's use, and was held to be liable for them in such an action. In both these cases the servant was considered to be liable only on the ground, that they committed tortious acts by pawning and selling the goods. A refusal to deliver goods on a demand made by the owner may be a tortious act and a conversion by one, who is in possession of them. There is no evidence exhibited in this case tending to prove, that the servant committed any tortious act; or that he assisted his master in such an act.

*Exceptions sustained, and new trial granted.*