FRED SHELLENBERG V. FREMONT, ELKHORN & MISSOURI VALLEY RAILROAD COMPANY.

FILED JUNE 19, 1895.   No. 5656.

1. Carriers of Goods: BAILMENT: RIGHTS OF OWNER OF GOODS. The rightful owner of personal property in the possession of a common carrier or other bailee may enforce his right thereto, although a stranger to the contract of bailment.

2. ———: REFUSAL TO SURRENDER GOODS TO OWNER: CONVERSION. The refusal of a common carrier to surrender goods in its possession to the rightful owner amounts to a conversion, for which the latter may recover if entitled to possession at the time of his demand therefor.

3. Interpleader. Whatever may have been the imperfections of the former practice, the remedy of the bailee under the system by proceeding in the nature of a bill of interpleader, thus requiring the several claimants of property to litigate the question of title between themselves, is ample and complete.

ERROR from the district court of Madison county. Tried below before ALLEN, J.

See opinion for statement of the case.

*Wigton & Whitham,* for plaintiff in error:

The plaintiff in error claims the title to the potatoes never passed from him, and that the delivery was inadvertent on his part, made with the expectation that payment would be made in cash on delivery; that when a sale is made for cash the delivery and payment of the consideration are both necessary to pass title.

When goods are sold for cash, payment is a condition precedent to the passing of title, unless payment is waived, and this is true whether there was fraud in obtaining possession or not. In such case where payment is not made, the seller may recover possession of goods delivered by re-

plevin, or an action of conversion will lie. (*Wabash Elevator Co. v. First Nat. Bank of Toledo,* 23 O. St., 311; *Russell v. Minor,* 22 Wend. [N. Y.], 659; *Allen v. Hartfield,* 76 Ill., 358; *Dows v. Kidder,* 84 N. Y., 121; *Tyler v. Freeman,* 3 Cush. [Mass.], 261; *Adams v. O'Conner,* 100 Mass., 515; *Solomon v. Hathaway,* 126 Mass., 482; *Kenney v. Ingalls,* 126 Mass., 488; *Hodgson v. Barrett,* 33 O. St., 63; *Mathews v. Cowan,* 59 Ill., 341; 5 Wait, Actions & Defenses, 581, 584, 585; *Daugherty v. Fowler* 25 Pac. Rep. [Kan.], 40; 1 Benjamin, Sales [6th Am. ed., rev. 1889], secs. 335, 350; *Acker v. Campbell,* 23 Wend. [N. Y.], 372; Hutchinson, Carriers, secs. 404–408; *The "Idaho,"* 93 U. S., 575; *Miller v. Woods,* 21 O. St., 485; *Bridge v. Bachelder,* 9 Allen [Mass.], 394.)

*John B. Hawley* and *B. T. White, contra:*

Being a stranger to the contract, plaintiff could not demand, nor was the defendant bound to make delivery of the property to him, except upon legal process, particularly as he was given an opportunity to protect his rights by such process. (*Sioux City & P. R. Co. v. First Nat. Bank,* 10 Neb., 556; *Gulf, C. & S. F. R. Co. v. Freeman,* 16 S. W. Rep. [Tex.], 109; *Houston & T. C. R. Co. v. Adams,* 49 Tex., 761.)

The title to the property passed with delivery. The charge of fraud is without evidence to support it. (Tiedeman, Sales, sec. 208; *Sutro v. Hoile,* 2 Neb., 186; *Haskins v. Warren,* 115 Mass., 514; *Warder v. Hoover,* 51 Ia., 491; *Cole v. Berry,* 42 N. J. Law, 308; *Smith v. Lynes,* 5 N. Y., 41; *Thompson v. Wedge,* 7 N. W. Rep. [Wis.], 560; *Perkins v. Lougee,* 6 Neb., 220; *Lumpkin v. Snook,* 63 Ia., 515; *Sheldon v. Davidson,* 55 N. W. Rep. [Wis.], 161; *Runge v. Brown,* 23 Neb., 817; *Faulkner v. Klamp,* 16 Neb., 174; *First Nat. Bank v. Yocum,* 11 Neb., 328; *Johnson v. Bent,* 9 So. Rep. [Ala.], 581; *Hedman v. Anderson,* 6 Neb., 392.)

*J. B. Barnes,* also for defendant in error.

POST, J.

This was an action in the district court for Madison county by the plaintiff in error to recover from the defendant in error for the conversion of a car load of potatoes. On the conclusion of the plaintiff's case the district court directed a verdict for the defendant, to which exception was taken, and judgment having been entered thereon, the cause has been removed into this court for review by means of a petition in error.

It is shown by the evidence in the bill of exceptions that about October 9, 1890, the plaintiff agreed to sell to one Day a car load of potatoes, to be delivered at Hoskins, a station on the Chicago, St. Paul, Minneapolis & Omaha railway, in Wayne county. At the time mentioned the plaintiff requested Day to pay some money on the potatoes to insure his taking them, to which the latter replied that he had already sold them and would have to take them. October 13 said Day drew a check in favor of the plaintiff or order, bearing date of October 17, on the First National Bank of Deadwood, South Dakota, for $375, the contract price of the potatoes, and informed the latter that it would be cashed by the Norfolk National Bank in the city of Norfolk. The car containing the potatoes, which was then on the side track ready for shipment, was by Day immediately consigned to the First National Bank of Deadwood, at Whitewood, South Dakota, the western terminus of the defendant's line of road. A bill of lading for the potatoes was delivered by the railroad company to Day, to which the latter attached a sight draft, drawn in his own favor, and forwarded it to the consignee bank for collection, but the drawee therein named having refused to pay the draft upon presentation, the bank, in the language of the cashier, "refused to have anything to do with the

potatoes." October 15, the Norfolk bank having refused, on presentation thereof, to cash the check drawn by Day to the plaintiff's order, the latter served the defendant, to whom the said car had in the meantime been delivered as a connecting carrier, with written notice to the effect that the potatoes mentioned had been procured by said Day through fraud and false representations, and demanded that they be held by the defendant subject to his, plaintiff's, order. Previous to the receiving of said notice the potatoes in controversy had been forwarded from Norfolk by the defendant company, and were then some place between said city and the point of their destination. October 18 the check above mentioned, which had, at plaintiff's request, been forwarded to the Deadwood bank for collection and return, was protested for non-payment. October 23 plaintiff, by his attorney, tendered to the defendant's agent at Whitewood the amount of its charges, including charges for unloading and storing, and demanded the potatoes, which demand was refused unless the plaintiff would surrender the bill of lading therefor.

The single question presented is whether the defendant, as a common carrier of property, was bound at its peril to determine which of the rival claimants of the property was the rightful owner. It was formerly held that where a bailee of goods delivered them to the rightful owner, he would, notwithstanding that fact, be answerable to the bailor without title thereto. The reason for the rule was that a bailee, having recognized the bailor as the owner, should not be permitted to dispute the latter's title; but according to the modern rule as recognized in this country and in England, it is a sufficient excuse for the non-delivery of personal property for the bailee to show that he has surrendered it to the rightful owner. (Hutchinson, Carriers, 404; *Western Transfer Co. v. Barber*, 56 N. Y., 544; *Harker v. Dement*, 9 Gill [Md.], 7; *Hardman v. Willcock*, 9 Bing. [Eng.], 382; *Cheesman v. Exall*, 7 Exch. [Eng.],

341; *Wells v. American Express Co.*, 55 Wis., 23; *American Express Co. v. Greenhalgh*, 80 Ill., 68; *Wolfe v. Missouri P. R. Co.*, 97 Mo., 473; *The "Idaho,"* 93 U. S., 575.) The reasoning upon which the modern doctrine rests is that the obligation of the bailee is to restore the property or to account for it, and that he has in legal contemplation accounted for it when he has delivered it to one whose title and right of possession is paramount to that of his bailor. He may, in brief, if he choose, yield possession to a stranger claiming the property, by taking the risk of establishing the title thus recognized. It is well established that a delivery of goods to the consignee before the carrier is made aware of the rights of a rival claimant thereto, as a complete extinguishment of its liability, although such claimant may be in fact the rightful owner (*Sheridan v. New Quay Co.*, 4 Com. B. [Eng.], 93; Hutchinson, Carriers, 408), since, as remarked by the author last cited, any other rule would be an "intolerable hardship upon the carrier."

On the question of the duty of a common carrier or other bailee at its peril to determine between the bailor and a third party claiming title, the authorities are less numerous than the importance of the subject would seem to suggest, although the pronounced weight thereof sustains the proposition that a refusal to surrender to the rightful owner amounts to a conversion, for which the latter may recover if entitled to possession at the time of his demand. In *Wells v. American Express Co.*, 55 Wis., 23, a well considered case, Judge Orton, after asserting the liability of the carrier, says: "This principle obtains in all cases of bailment, and the *jus tertii* may be enforced even as against the contract of bailment, and when enforced, will be made available to excuse and protect the bailee from the performance of delivery according to its terms, and it is founded in reason as well as sustained by a great preponderance of authority. There can be no distinction between its application in case the bailor or consignor seeks to reclaim the

property from the bailee or carrier and in case the con-
signee seeks its delivery, for the rights of all the parties to
the contract must yield to the paramount right of the real
owner of the property." It is also said in the same opin-
ion: "When the liability of the express company to re-
spond to the claim of a third person as the exclusive owner
of the property against the terms or directions of the con-
signment for delivery to another, or for delivery to himself
and another, is established by law as now seems clear, it
follows that such third person should recover in an action
against the company upon proof of his ownership." The
proposition there asserted finds support in the following
authorities: *Western Transportation Co. v. Barber,* 56 N.
Y., 544; *The "Idaho,"* 93 U. S., 575; Hutchinson, Car-
riers, 406, 407. We have been referred to a single case at
variance with the above doctrine, viz., *Kohn v. Richmond
& D. R. Co.,* 16 S. E. Rep. [S. Car.], 376, in which, with
one judge dissenting, the liability of the defendant was de-
nied. The reasons upon which that case rests are shown by
the following quotation: "It seems to us that common jus-
tice would require that such burden should be assumed by
the claimant, who is most likely to have the means of meet-
ing it, and not upon the carrier, who cannot be supposed to
know anything about the real ownership of the goods, and
had a right to assume that the person from whom he re-
ceived possession of the goods was such rightful owner,
possession of personal property being evidence of title."
There is no doubt that the assertion of conflicting claims
has been the occasion of frequent embarrassment to bailees,
particularly common carriers, who are bound to receive
goods offered for transportation, although there has been
suggested no sufficient reason for excepting them from the
operation of the rule by which the rightful owner is per-
mitted to reclaim property wherever found. We are aware
of exceptions to the rule, but they rest upon equitable con-
siderations, none of which are presented by the record in

this case and need not, therefore, be noticed; but whatever may have been the embarrassment and inconvenience of the bailee under the former practice, his remedy under our system, by an answer in the nature of a bill of interpleader, thus making the adverse claimant a party to the controversy, and requiring such claimants to litigate the question of title between themselves, is ample and complete. It follows that in directing a verdict for the defendant the district court erred, for which the judgment must be reversed and a new trial awarded.

REVERSED.