## SHELLNUT *v.* CENTRAL OF GEORGIA RAILWAY CO.

A common carrier is bound to receive all goods offered that he is able and accustomed to carry, and to transport and deliver such goods in pursuance of the bailment; and where he receives goods offered, the possession thereof by the person offering the same as freight being apparently rightful, though as a matter of fact it may not be actually so, the carrier will not be liable as for a conversion, in an action brought by the true owner, unless the latter intervenes before the goods are delivered and demands them or gives notice of his right to the property in question and of his intention to enforce it.

Argued January 15,—Decided August 19, 1908.

Action for damages. Before Judge Freeman. Haralson superior court. February 6, 1907.

*Spencer R. Atkinson* and *J. S. Edwards,* for plaintiff.

*J. Branham, G. E. Maddox,* and *E. S. Griffith,* for defendant.

BECK, J. The plaintiff's suit was for the conversion of thirty-three described bales of cotton, of the value of $1,800, which were alleged to have been wrongfully taken and carried away by the railroad company. On the trial the plaintiff testified, in substance, as follows: He was familiar with the buying and selling of cotton, and had been shipping cotton for several years. The cotton sued for was part of a lot of 300 bales which he had bought and which he was negotiating to sell to the E. S. Ehney Cotton Company of Atlanta, through their agent, S. O. Haney, with whom plaintiff was dealing personally. The cotton was stored in the Merchants & Planters warehouse in Bremen, and it was customary in making sales to make out an invoice of the cotton and deliver the invoice to the buyer when payment was made. The plaintiff agreed with the agent Haney to sell to the E. S. Ehney Cotton Com-

pany the 300 bales of cotton at a certain price per pound, and delivered to Haney and also to the warehouseman a copy of the invoice above referred to.  The purchase-price amounted to $13,000, and Haney paid plaintiff $8,000 which he received on account.  Plaintiff's agreement with Haney was that the latter should get the cotton out of the warehouse, line it up, and grade it preparatory to shipment.  As to who should make delivery of the cotton to the railroad company and the circumstances under which such delivery should be made, the plaintiff's evidence is somewhat confused.  At one time he testifies that he expected Haney to have the cotton loaded on the cars, receive the bill of lading, and settle with him afterwards as to the balance of the purchase-money; while from other portions of his testimony it seems that Haney had authority merely to prepare the cotton for shipment, and was not to deliver to the railroad except in conjunction with the plaintiff.  But the agreement between the plaintiff and Haney contemplated a cash sale and a payment by Haney of the balance of the purchase-money before plaintiff's claim upon the bill of lading was finally surrendered to Haney.  The plaintiff had given the railroad company no authority to ship the cotton.  After delivering the warehouse invoice to Haney and receiving the $8,000 from him, the plaintiff left Bremen for a few days, and upon his return discovered that the cotton had been shipped away.  Upon inquiry of the railroad agent at Bremen, the plaintiff learned that Haney had shipped the cotton to the E. S. Ehney Cotton Company of Atlanta, the railroad agent stating that he thought it was all right.  Plaintiff then made demand of the railroad agent for the bill of lading, which was refused.  No demand was made for the price of the cotton.  Upon inquiry it was ascertained that Haney had left the place and was not to be found.  Plaintiff then proceeded to Atlanta and demanded the balance of the purchase-price from the E. S. Ehney Cotton Company, who stated to him that they did not "know him in the transaction," but bought the cotton from Haney, who was their road agent, buying under instructions from them, but who had no authority in this instance to purchase the 300 bales of the plaintiff. However, they paid the plaintiff $4,000, which he received, but under protest that it was not sufficient to satisfy the balance due him.  The amount due him was $1,800, and the value of this in cotton the plaintiff calculated to be 33 bales of the weight, grade,

and price per pound set forth in the petition; and the 33 bales sued for were the last 33 described in the warehouse invoice of the 300 bales. The cotton had been shipped in 100-bale lots, and the 33 bales in question were selected from the last lot shipped. Two bills of lading, covering 50 bales each of this lot, were introduced in evidence, showing shipment by Haney, consigned to "order notify E. S. Ehney Cotton Company, Atlanta, Ga." Plaintiff offered in evidence the receipt given by him to the Ehney Cotton Company for the $4,000 paid him, in which it was recited that the receipt was in full for all demands, "excepting my claim against the Ehney Cotton Company for the value of certain bales of cotton claimed by me to have been converted by the Ehney Cotton Company." The receipt was ruled out, upon the objection that it was irrelevant and a declaration of plaintiff in his own interest, to which ruling plaintiff excepted. Plaintiff also excepted to the refusal of the court, upon objection upon the ground of irrelevancy, to allow him to testify that he owned a plantation at the time of the contract of sale of this cotton and had produced on his plantation during that year 30 bales of cotton. Upon this evidence the court, on motion, granted a nonsuit, and the plaintiff excepted.

Even if we view the evidence most favorably to the plaintiff in this case, we must affirm the judgment of the court below granting a nonsuit. Admitting that the title to the cotton had never passed from Shellnut and that when Haney took possession of it and delivered it to the railroad company he was not rightfully in possession of the same, still he was apparently, so far as the railroad company knew, so far in the rightful possession of the property that he had a right to deliver it for shipment and take the bill of lading which was issued to him by the company. And the bill of lading having been issued in the name of Haney, the cotton was shipped and delivered under that bill of lading; and when it was so shipped and delivered, the company was free from any liability for a conversion, as no demand was made upon it for the property while it was in its possession. It seems to be a well-settled principle that a common carrier is guilty of no conversion, "though he receive property from one not rightfully entitled to possession, and, acting as mere conduit, deliver it in pursuance of the bailment, if this is done before notice of the rights of the real owner. . . Common carriers, by reason of the nature of

their business, which imperatively requires them to receive and forward goods when tendered in the usual course of their business, have long formed an exception to the stringency of general rules in respect to what constitutes, in similar cases, a conversion. The authorities on this point are abundant: Greenway v. Fisher, 1 Car. & P. 190; Ross v. Johnson, 5 Burr. 2825; Fowler v. Hollins, 7 L. R. Q. B. 616; Hiort v. Bott, L. R. 9 Ex. 86; Burditt v. Hunt, 25 Me. 419 (43 Am. Dec. 289); Smith v. Colby, 67 Me. 169; Strickland v. Barrett, 20 Pick. 415; Loring v. Mulcahy, 3 Allen, 575; Fouldes v. Willoughby, 8 Mees. & W. 540; Waring v. Railroad Co., 76 Pa. St. 491." Nanson v. Jacob, 93 Mo. 331 (3 Am. St. R. 531, 6 S. W. 246); Cooley on Torts (3d ed.), 877, Hutch. Car. §§ 148, 753. See also 6 Cyc. 472, and numerous cases there cited. "A common carrier must accept freight from every one offering the same; and is not guilty of conversion in accepting freight from a party in possession thereof, unless the true owner intervenes before the goods are delivered and demands them." Robert C. White Live Stock Co. v. Chicago etc. R. Co., 87 Mo. App. Rep. 330. To lay down a different rule would be productive of results that would not only work great hardships upon common carriers, but, in many cases, would amount to the grossest injustice, especially in view of the provisions of the Civil Code, §§ 2278, 2286. The first of these sections provides that "A common carrier, holding himself out to the public as such, is bound to receive all goods and passengers offered that he is able and accustomed to carry, upon compliance with such reasonable regulations as he may adopt for his own safety and the benefit of the public." The latter section declares that "The carrier can not dispute the title of the person delivering the goods to him, by setting up adverse title in himself, or a title in third persons, which is not being enforced against him." If the doctrine insisted upon by the plaintiff in this case should be set up and adhered to as a rule of law, then a common carrier, when property was offered to it for shipment, could not, with safety, receive the same for transportation until it had taken time to investigate and ascertain whether or not the person in possession of the property was the owner of it, or rightfully in possession of it. Our attention is called, in the brief of counsel, to the case of the Southern Express Company v. Palmer, 48 Ga. 85, where it is apparently held that "A carrier who receives goods to

carry from one not authorized to deliver them to him is a trespasser, and may be sued in trover for the goods, as any other illegal taker may be." An examination of that case, however, shows that the extract which we have quoted is mere obiter, as the question which is there apparently ruled was not involved in the case. The case of the *Charleston Railway Co.* v. *Pope*, 122 *Ga.* 577 (50 S. E. 374), is cited as one recognizing and applying the rule apparently laid down in the *Southern Express Co.* case, last above referred to. But an examination of the case of *Railway Co.* v. *Pope* reveals that at the time of bringing the action against the railroad company by Pope & Fleming, the carrier company had not parted with the possession of the goods for the conversion of which it was sued. While in the case of the *Georgia Railroad Co.* v. *Haas,* 127 *Ga.* 187 (56 S. E. 313, 119 Am. St. R. 327), it was held that a carrier can not refuse to recognize the demand of the true owner of the property, made while such property is in the carrier's possession and duly pressed, and carry it away and deliver it to a person who does not own it, or his order, merely because the carrier received it from such person as consignor, there is no intimation in that case that if the property had been carried and delivered in pursuance of the directions given by the person who, being in possession of it, offered it for carriage before demand was made by the true owner, the carrier would have been liable as for a conversion. Indeed, the argument and the reasoning in that case tend very strongly to the conclusion which we have reached in this. We do not think it could be said that where a railroad company receives property for transportation, which the law imperatively demands that it shall receive when it is offered, and then, acting, as was said in the case of Nanson *v.* Jacob, supra, "as a mere conduit," delivers it in pursuance of the bailment, it can be said to exercise "a dominion over it in exclusion or in defiance" of the true owner's right; because if the true owner should, before the delivery of the property by the carrier in pursuance of the bailment, make demand for it or show his right to the possession of it, and give notice of his intention to enforce that right, then the carrier would be bound to recognize that right, or, refusing to do so, would refuse at its peril.

Exceptions were taken to the refusal of the court to admit certain evidence tendered by the plaintiff. It is not necessary to

pass upon the question raised by these assignments of error, as the decision which we have made upon the controlling question in the case could not possibly be affected, if we consider the evidence which was tendered and repelled by the trial court, which is here as a part of the brief of evidence in the case.

*Judgment affirmed. All the Justices concur.*