[No. 2303]

## J. B. DIXON, RESPONDENT, *v.* SOUTHERN PACIFIC COMPANY (A CORPORATION), APPELLANT.

[172 Pac. 368; 177 Pac. 14]

1. TROVER AND CONVERSION—RECEPTION FROM WRONGFUL POSSESSOR.

   As a general rule, it is a conversion to receive property from one wrongfully in possession, and thereafter to exercise control of it against the wish of the person entitled.

2. CARRIERS—LIABILITY OF CARRIER—CONVERSION.

   The carrying of goods by a carrier from terminus to terminus on the requirement of a person unlawfully in possession is not a conversion, though if the true owner intervenes before the goods are delivered, and demands them, and the carrier refuses to deliver them, it is liable in trover.

3. CARRIERS—TRANSPORTING ORE—NOTICE OF TITLE.

   Where the owner of ore on a mine dump, anticipating that E., who was operating the mine, would endeavor to ship it, notified the railroad, and forbade the transportation of such ore, and the railroad, when E. offered the ore for transportation, required him to make affidavit that such ore was his, which he did, and the railroad transported the ore for him, such railroad was liable to the owner of the ore as for a conversion, being charged with constructive notice of the owner's right.

4. TROVER AND CONVERSION—DAMAGES—VALUE OF PROPERTY.

   The measure of damages for a conversion of property is its value at the time of the conversion, with legal interest from the date to that of rendering judgment, though special and exemplary damages may be allowed in certain cases.

5. EVIDENCE—JUDICIAL NOTICE—EXTRACTION OF MINERAL FROM ORE.

   Courts cannot take judicial notice of what percentage of mineral can be extracted from a particular class of ore, which is a matter of proof in each particular case, where material.

### ON REHEARING

1. CARRIERS — DUTY AS TO DELIVERY — CONFLICTING CLAIMS TO PROPERTY.

   It is the duty of a carrier on demand to deliver property in its possession to the true owner, whether it has been received

from him or from another as consignor, notwithstanding that, in case of conflicting claims, a hardship will be imposed upon it in determining right of possession.

2. CARRIERS—CONFLICTING CLAIMS TO PROPERTY—NOTICE OF OWNER-SHIP—WAIVER.

Where an owner of ore notified defendant carrier that he owned it, but that he believed a third person intended to steal and ship it as owner, the carrier by avowing its intention to ship the ore if tendered to it waived its right to insist that the description of the ore was insufficient to give it notice of plaintiff's title in a subsequent suit by the owner against the carrier to recover for the conversion of the ore.

## ON COSTS

1. COSTS—APPEAL—MODIFICATION OF JUDGMENT—STATUTE.

Under Rev. Laws, 5381, where, in opinion on rehearing, the supreme court made no order as to costs, since defendant appellant had obtained relief originally by reduction of judgment against it, judgment having been reversed unless plaintiff agreed to reduction, appellant should recover its costs on original appeal.

2. COSTS—REHEARING—STATUTE.

Where both parties petitioned for rehearing, and neither obtained any relief as a consequence, each party, under Rev. Laws, 5381, should pay his own costs incurred on rehearing.

APPEAL from Second Judicial District Court, Washoe County; *Mark R. Averill,* Judge.

Suit by J. B. Dixon against the Southern Pacific Company, a corporation. From a judgment for plaintiff, defendant appeals. **Reversed,** and cause remanded for new trial, unless plaintiff agrees to a reduction of judgment, in which event, as modified, it will be affirmed.

After reversal on rehearing from a ruling of the clerk of the supreme court, on the cost bill filed by defendant, said defendant appeals. **Ruling ordered modified, and, as modified, affirmed.**

*Brown & Belford,* for Appellant:

As a common carrier, the defendant cannot be held guilty of converting property delivered for shipment, and by it transported in the ordinary course of its business as such common carrier. "A common carrier is bound to accept all goods offered within the course of his employment and is liable to an action in case of

refusal." York Co. v. Central Co., 3 Wall. 107; Jackson A. I. Works v. Hurlbut, 158 N. Y. 34; 6 Cyc. 365; Michie on Carriers, sec. 333; Hutchinson on Carriers, 3d ed., sec. 47.

In the State of Nevada the common-law duty to receive and carry all goods offered for shipment, under penalty of liability for damages, is imposed upon railroads by statute. Rev. Laws, 3558, 3559. Both at common law and under the statute, a railroad company refuses at its peril to transport any goods offered it for shipment, its reasonable regulations being complied with.

It is the rule of law that where one is in possession of personal property, such possession is prima facie evidence of ownership in him. Nanson v. Jacobs, 12 Mo. App. 125; Smith v. Colby, 67 Me. 169; Gurley v. Armstead, 148 Mass. 267; Saunders v. Greever, 85 Va. 252. A common carrier is entitled to rely upon the prima facie evidence of ownership indicated by the possession of one who tenders him goods for shipment. The ordinary rule as to the liability of one who exercises acts of dominion over the property of another without that other's consent finds an exception in the case of common carriers. Gurley v. Armstead, supra; Robert G. White Co. v. Railroad, 87 Mo. App. 330; Fowler v. Hollins, 7 Q. B., 35 Victoria, 616; Burditt v. Hunt, 25 Me. 419; Shellnut v. Central Ry. Co., 18 L. R. A. 494; 6 Cyc. 472.

It is only where goods are in the possession of the carrier, and the true owner, who is not the shipper or the consignee, demands possession, that the railroad company must satisfy itself as to the title, and deliver the goods to the party to whom they belong. In the absence of such demand, the carrier will be protected in the delivery of the goods to the consignee. Robert G. White Co. v. Railroad, supra.

There was no evidence which justified the lower court in finding mere nominal damages. Courts are supposed to act on evidence, and not on mere assumption. No

judge can look at a sample of ore and say that he has judicial knowledge that the ore when smelted or otherwise treated, will yield any certain per cent of the theoretical value. Plaintiff failed to meet the burden imposed by law upon him of showing the value of the property alleged to have been taken. Only certain elements of value were shown. There was, therefore, no basis for an approximation of damages. Richardson v. National O. P. & R. Co., 34 Nev. 453.

The damages to which plaintiff would be entitled, if he is entitled to any damages, would be the market value of the property at the time and place of the alleged conversion, with damages for the detention of that value, which is legal interest from the time of the conversion to the date of the judgment. Sutherland on Damages, 4th ed., sec. 1109; Carlyon v. Lannan, 4 Nev. 156; Boylan v. Huguet, 8 Nev. 345; Menzies v. Kennedy, 9 Nev. 152; Newman v. Kane, 9 Nev. 234; Bercich v. Marye, 9 Nev. 312; Ward v. Carson River Wood Co., 13 Nev. 44; Robinson M. Co. v. Riepe, 37 Nev. 27; Torp v. Clemons, 37 Nev. 474.

*A. E. Painter (J. B. Dixon,* in pro. per.), for Respondent:

The authorities are numerous and practically unanimous that the owner of personal property of which he is deprived by the acts of others is entitled to be reimbursed for all loss sustained by him by reason of the taking or conversion, and it is immaterial whether or not the defendants acted in bad faith or intended to injure the plaintiff, except as to the amount of damages to be allowed. An illegal taking is all that is necessary to show. 4 Sutherland on Damages, sec. 1108; Swim v. Wilson, 27 Pac. 33; Kimball v. Billings, 55 Me. 147; Koch v. Branch, 44 Mo. 543; Hoffman v. Carow, 22 Wend. 285; Bercich v. Marye, 9 Nev. 312.

Trover will lie against a carrier for a misdelivery or an appropriation of the property to its own use, or for any act antagonistic to and inconsistent with plaintiff's

claim of right. Blowers v. Canadian Pacific Ry. Co., 155 Fed. 935; Central Ry. Co. v. Lampley, 76 Ala. 357; Illinois Central Ry. Co. v. Parks, 54 Ill. 294. As the actual owner may recover the property from the carrier, it is excused for failure to deliver to the consignee by delivering the property to the actual owner. 1 Michie on Carriers, 547; Raleigh R. Co. v. Lowe, 101 Ga. 320; National Bank v. Railroad, 44 Minn. 224; King v. Richards, 6 Whart. 418.

Where a carrier wrongfully delivers goods to one other than the owner, after having been expressly directed by the owner not to deliver them, the carrier is guilty of conversion, for which the owner can recover without further demand. Lister v. Railroad, 36 N. Y. Supp. 907; 6 Cyc. 472.

It is held by almost all courts that where values are fluctuating, or where there are special circumstances, such rule will be adopted as will place the plaintiff in as favorable a position as he would have occupied if his property had not been taken from him against his will. In most of the cases this has been held to be the highest value between conversion and trial, a few cases holding that the value at the time of the trial is the proper rule. O'Meara v. North American M. Co., 2 Nev. 112; 4 Sutherland on Damages, pp. 4239, 4240, 4250; Douglas v. Kraft, 9 Cal. 562; Dorsey v. Manlove, 14 Cal. 555; Burton v. Dutcher, 34 N. Y. 493; Burks v. Hubbard, 69 Ala. 379; Whitfield v. Whitfield, 40 Miss. 352; Gregg v. Fitzhugh, 36 Tex. 127; Smith v. Savin, 141 N. Y. 315.

In addition to the highest value between conversion and trial, respondent ought in reality to have been allowed punitive damages, so that the amount allowed was too small rather than too large. If the amount allowed is not too large, it is immaterial if the trial judge gave the wrong reason for his decision.

By the Court, COLEMAN, J.:

Respondent brought suit to recover damages alleged to have been sustained by the conversion by appellant

of certain ore which respondent claimed to own. The undisputed facts are that in July, 1914, appellant was engaged in operating a line of railroad in the State of Nevada; that the respondent owned certain ore which he had purchased at an execution sale, wherein it and other personal property was sold under a judgment against the Nevada United Mines Company; that one Galvin was the purchaser at an execution sale of the mining claim upon which said ore was situated, and thereafter entered into an agreement with one Ephraim, pursuant to which Ephraim mined and extracted therefrom certain ore; that in the month of June, 1914, respondent, anticipating that the said Ephraim intended to ship respondent's ore, notified the railroad company that he owned some ore upon the dump of the mine in question, and that he anticipated that Ephraim would endeavor to ship it, and forbade the transportation thereof by the railway company; that about ten days or two weeks after said notice had been given, the said Ephraim offered to the appellant for transportation about 26½ tons of ore; that thereupon the appellant required that the said Ephraim make affidavit that he owned the ore so tendered for transportation, and upon his doing so the ore was received and transported to the Western Ore Purchasing Company at Hazen, Nevada, which was engaged in the business of sampling and buying ores. The question of the ownership of the ore so shipped was litigated in the trial court, which found that the respondent owned fourteen tons thereof, and the finding on that point is not questioned here. The court found that said fourteen tons of ore was converted by appellant, that it·was valued at $2,205.70, that $6 a ton should be deducted as smelting charges, and gave judgment against appellant for $2,121.70. A motion for a new trial having been denied, an appeal was taken.

**1.** It is urged as a ground for reversal that under the circumstances of this case appellant could not have been guilty of conversion. As a general rule, it constitutes conversion to receive property from one

wrongfully in possession of it and thereafter exercise dominion or control over it against the wish of the person rightfully entitled to its possession.   38 Cyc. 2024.   But appellant contends that since a common carrier must accept for transportation property offered to it or be liable in damages for refusal to do so (citing Hutchinson on Carriers, 3d Ed., sec. 47;  Michie on Carriers, sec. 333;  Revised Laws of Nevada, 3558, 3559), the facts of this case constitute an exception to the general rule, and that the rule which controls is that laid down in Fowler v. Hollins, 7 Q. B. 632, where it is said:

"The trade of a common carrier is one of the few occupations which the person carrying it on is bound by law to exercise upon the requirement of a person bringing him goods to be carried, and it would be unjust that he should be bound by law to do an act which the law, in the event of the person bringing the goods not being the true owner, declared to be an unlawful act. It has therefore been deemed that the carrying of goods by a carrier from terminus to terminus, upon the requirement of a person unlawfully in possession of them, is not conversion, although, if the true owner intervenes before the goods be delivered and demands them, and the carrier refuses to deliver them, he is liable in an action of trover."

In support of this doctrine, our attention is called to Gurley v. Armstead, 148 Mass. 267, 19 N. E. 389, 2 L. R. A. 80, 12 Am. St. Rep. 555;  White Live Stock Co. v. Railway Co., 87 Mo. App. 330;  Nanson v. Jacobs, 93 Mo. 331, 6 S. W. 246, 3 Am. St. Rep. 531;  Burditt v. Hunt, 25 Me. 419, 43 Am. Dec. 289;  Shellnut v. Cent. Ry. Co., 131 Ga. 404, 62 S. E. 294, 18 L. R. A. (N. S.) 494.

2. We approve of the rule just mentioned, but it is based upon a reason which does not exist in the case at bar.   The reason for the rule is that a common carrier cannot be expected to inquire into the right of a person in possession of property to ship it;  but it will be observed that as soon as the carrier has notice from the person rightfully entitled to the possession of the

property to deliver the same to him, failure to do so will make the carrier liable.

Counsel for appellant say in their brief:

"It is only where the goods are in the possession of the carrier, and the true owner, who is not the shipper or the consignee, comes and demands possession, that the railroad company must satisfy itself as to the title, and deliver the goods to the party to whom they belong."

3. We find nothing in the authorities or in reason to justify this contention. A carrier can be guilty of conversion by wrongfully taking into its possession property and exercising dominion over it, as well as by wrongfully exercising dominion over it after it comes into its possession. Let us illustrate: Suppose that while Jones, a bank clerk, is taking a sack of gold from one bank to another, and just as he gets opposite the express company's office the gold is snatched from him by a thief, who carries it into the express office and offers it to the company for transportation, but, before the company receives it, Jones acquaints the company with the facts and notifies it not to receive the gold. Could it be said that in case the gold is accepted, transported to California, and there delivered to the thief, the company would not be liable for conversion simply because it did not have possession of the gold at the time it was warned of the facts? We think not. Yet, if the contention of counsel is sound, the express company would not be liable because it was notified of the facts a moment before it received possession of the gold, instead of after its receipt thereof.

We do not wish to be understood as holding that notice to a common carrier by the owner of property that he expected some one to tender for transportation property not capable of accurate description, belonging to him, and warning such carrier not to accept it, would in every instance make such carrier liable should it accept and transport the property and thereafter deliver it to one not the owner. But in the case at bar the carrier had notice that a particular person, one

Ephraim, would offer the ore for transportation; and when it was offered, the company, having in mind the notice received by it, required of Ephraim an affidavit of ownership. Since the notice which appellant received was sufficient to warrant it in taking the precaution of requiring an affidavit from Ephraim, we conclude that appellant was brought within the rule asserted in Lang Syne M. Co. v. Ross, 20 Nev. 127, 18 Pac. 358, 19 Am. St. Rep. 337, as follows:

"Whenever a party has information or knowledge of certain extraneous facts which of themselves do not amount to, nor tend to show, an actual notice, but which are sufficient to put a reasonably prudent man upon an inquiry respecting a conflicting interest, claim, or right, and the circumstances are such that the inquiry, if made and followed up with reasonable care and diligence, would lead to the discovery of the truth—to a knowledge of the interest, claim, or right which really exists—then the party is absolutely charged with a constructive notice of such interest, claim, or right."

See, also, Rollo v. Nelson, 34 Utah, 116, 96 Pac. 263, 26 L. R. A. (N. S.) 315; 29 Cyc. 1114.

4. It is also contended that the court erred in its finding as to the amount of damages sustained by respondent. Appellant offered evidence to the effect that the ore purchasing company paid Ephraim the sum of $544.92 for the two shipments of ore, which was based upon the value of the ore at the time of purchase, while the court in making its findings and rendering judgment based its conclusion upon the highest market price of the metals contained in the ore between the date of receipt of the ore and the date of trial. That this was clearly error is not debatable. This court has, in several instances, had occasion to lay down the rule which should control our courts in fixing the damage which a party sustains under circumstances like those existing in the case at bar. In Torp v. Clemons, 37 Nev. 474–485, 142 Pac. 1115, where the prior decisions of this court on the point were

cited, it was held that the measure of damage for wrongful conversion of property is the value of the property at the time of conversion, with legal interest from the date of conversion to the date of rendering judgment. It is contended that some other courts have laid down a different rule, and one which we should follow. Suffice it to say that this court, in Boylan v. Huguet, 8 Nev. 345, considered at some length this question, adverted to the decisions taking the contrary view and adopted the rule which has ever since been adhered to, and we see no reason for repudiating it now. True, as said in Ward v. Carson River Wood Co., 13 Nev. 62, special and exemplary damages may be allowed in certain cases, but the trial court did not find that respondent was entitled to recover special or exemplary damages.

5. We deem it proper to say, also, that the learned trial judge, in taking a 90-per-cent extraction as a basis for figuring the value of the ore in question, merely assumed that a 90-per-cent extraction could be obtained, as shown by his opinion, and did not base his conclusion upon any evidence introduced at the trial. Courts cannot take judicial notice of what percentage of mineral can be extracted from a particular class of ore; it is a matter of proof in each particular case. In Richardson v. National Ore P. & R. Co., 34 Nev. 455, 124 Pac. 779, it was said:

"Courts in this state will take judicial knowledge of the fact that processes of crushing, amalgamating, and cyaniding ores will not effect an extraction of 100 per cent of the metallic content. What would be a reasonable per cent of extraction would depend largely upon the process used and the character of the ore; but there is nothing in this case to show what ought to have been such extraction."

Counsel for appellant suggest in their brief that in case this court finds that appellant was guilty of conversion the judgment may be reduced to $287.28, with legal interest from the date of conversion, which it claims is based upon the highest selling price of the

metallic contents of the ore during July, 1914. Since the evidence in this case is such that it is impossible for us to say for just what sum the judgment should be, it is ordered that the judgment of the district court be reversed and the cause remanded for a new trial, unless the respondent agrees, within ten days from the filing of the remittitur herein in the district court, in a written statement filed with the clerk of said court, to a reduction of the said judgment to the sum of $287.28, with legal interest as aforesaid; in which event the judgment as thus modified will be affirmed; appellant to recover its costs on appeal.

### ON REHEARING

By the Court, COLEMAN, J.:

The question of the propriety of establishing the rule laid down in our former opinion being of such great importance to common carriers of the state, we decided to grant the urgent petition for a rehearing, that we might give the same further consideration; but, after extensive investigation and mature reflection, we find ourselves unable to adopt the views urged by counsel for appellant.

Upon the original hearing the burden of appellant's argument turned upon the distinction sought to be made between a case in which the property in question was in the possession of the carrier at the time of receiving notice of the rights of the third party and a case in which the carrier accepted the property after receiving such notice. At this time, the burden of appellant's contention is the injustice of the rule which holds a common carrier liable under the particular facts of this case, because of the indefinite description given of the ore in question at the time the notice was served upon appellant. In fact, it is now contended that a common carrier is not liable for refusing to deliver up possession of property, even though demanded by the owner, who is entitled to the possession thereof, and the case of Switzler v. N. P. Ry. Co., 45 Wash. 221, 88 Pac. 137, 12 L. R. A. (N. S.) 254,

122 Am. St. Rep. 892, 13 Ann. Cas. 357, is cited as sustaining that contention.  The argument now urged upon us necessitates the statement that the trial court held the ore in question to have been stolen from respondent by Ephraim, and also of the statement of the evidence of the general freight agent of the appellant company, who when notified by respondent not to accept the ore telegraphed to San Francisco for instructions.  He testified:

"I told him (respondent) that we (the railroad) could not stop the ore, and that we would not if it was offered to us for shipping as common carriers without due process of law being taken to protect us from shipping it; that we must ship it."

This statement to respondent obviated the necessity of further action by respondent so far as giving a more definite description of the ore is concerned or of taking other steps except legal ones to protect himself, for he was notified that they would be ignored.

1. The line of argument now urged, as to the hardships which would be inflicted upon a carrier because of the necessity to determine who is the one entitled to the possession of the property, is not new, and has been uniformly urged in favor of appellant's contention.  This very argument is answered in a unanimous opinion in Georgia R. & B. Co. v. Haas, 127 Ga. 187, 56 S. E. 313, 119 Am. St. Rep. 327, 9 Ann. Cas. 677, the opinion having been written by that distinguished jurist, Mr. Justice Lumpkin.  We quote with approval from the opinion:

"A carrier cannot refuse to recognize the demand of the true owner of property, made while such property is in the carrier's possession and duly pressed, and carry it away and deliver it to a person who does not own it, or his order, merely because the carrier received it from such person as consignor.  There may be some authority tending to sustain this position; but we think the better view is to the contrary.  It may be inconvenient for a

common carrier to have two claimants for goods in his possession; but so it is for any other bailee or depositary. The rule that a carrier is estopped from denying the title of his consignor is not without exception in this state. Section 2286 of the civil code [of 1895] is as follows: 'The carrier cannot dispute the title of the person delivering the goods to him, by setting up adverse title in himself, or a title in third persons, which is not being enforced against him.' Hutchinson on Carriers (2d Ed.), sec. 407, thus deals with the subject: 'In such cases, however, if it should turn out that such claimant has not the paramount title as against the bailor, the withholding the goods by the carrier from the latter will be treated as a conversion by him. And so, when a demand is made upon him by the adverse claimant, if the carrier should refuse to surrender the goods to him, he will be equally guilty of a conversion, if the title of such claimant should prove to be the better, and he, as the true owner, was really entitled to them. Where, therefore, the title to the property is disputed, and it becomes difficult or impossible for the carrier to determine who is entitled to them, he may be placed in a perilous position; for, no matter to which he gives up the goods, whether to the bailor, or in pursuance of his directions, or to the adverse claimant, he will be in danger of being held to account for them by the other, as for a conversion, if he can show the better title.' * * * In Trans. Co. v. Barber, 56 N. Y. 544, it is said: 'When the owner comes and demands his property, he is entitled to its immediate delivery, and it is the duty of the possessor to make it. The law will not adjudge the performance of this duty tortious as against a bailor having no title.' In Hentz v. The Idaho, 93 U. S. 575, 23 L. Ed. 978, Mr. Justice Strong, in the opinion, says: 'But if he [the bailee] has performed his legal duty by delivering the property to its true proprietor at his demand, he is not answerable to the bailor. And there is no difference in this particular between a common carrier and other

bailees.' See, also, 5 Am. & Eng. Ency. Law (2d Ed.), 196, and citations; Southern Express Co. v. Palmer, 48 Ga. 85 (2) ; Savannah R. Co. v. Wilcox, 48 Ga. 432; Shellenberger v. Fremont R. Co., 45 Neb. 491, 63 N. W. 859, 50 Am. St. Rep. 563; Wells v. Am. Exp. Co., 55 Wis. 32, 11 N. W. 537, 12 N. W. 441, 42 Am. Rep. 700; Savannah Ry. Co. v. Talbot, 123 Ga. 378, 51 S. E. 401, 3 Ann. Cas. 1092; Atlantic R. Co. v. Howard Supply Co., 125 Ga. 478, 54 S. E. 530."

The Supreme Court of Kansas, in A., T. & S. F. Ry. Co. v. Jordon Stock Food Co., 67 Kan. 86, 72 Pac. 533, in which all the justices concurred, considering the question, said:

"The position of the railroad company was one of great hazard and embarrassment. It was liable to be mulcted in damages if it wrongfully refused to carry and deliver the goods under its contract with the shipper, and it was without any adequate means or opportunity of knowing definitely who the true owner might be. The law, however, must always aid the true owner in the recovery of his property, and he cannot be deprived of it by means of any contract relation between a wrongdoer and the carrier. When, therefore, the owner did appear and demanded his goods, he was entitled to their immediate delivery, and it was the duty of the possessor to make it."

In Nanson v. Jacob, 93 Mo. 331, 6 S. W. 246, 3 Am. St. Rep. 531, the question of the liability of the carrier was made to turn upon the matter of notice. The court said:

"A mere bailee, whether common carrier or otherwise, is guilty of no conversion, though he receive property from one not rightfully entitled to possession, and, acting as a mere conduit, deliver it in pursuance of the bailment, if this is done before notice of the rights of the real owner. On the other hand, if he has such notice, his status is altogether altered, and he acts at his peril. Cooley on Torts, 456. This distinction between acting with or without notice, in such circumstances, is fully

and pointedly recognized in Dusky v. Rudder, 80 Mo. 400."
The rule thus laid down is recognized as correct in
Robert G. White L. S. Co. v. Chicago, M. & St. P. R. R.
Co., 87 Mo. App. 330.

It is insisted that the case of Shellnut v. Cent. of Ga.
Ry. Co., 131 Ga. 404, 62 S. E. 294, 18 L. R. A. (N. S.) 494,
which was relied upon in the original hearing, supports
the appellant's contention. If the case mentioned is an
authority in this case, it is clearly against appellant's
contention, for it appears from the opinion that the
cotton in question was shipped and delivered to con-
signee before demand therefor was made. The court
said:

"And, the bill of lading having been issued in the
name of Haney, the cotton was shipped and delivered
under that bill of lading; and, when so shipped and
delivered, the company was free from any liability for
a conversion, as no demand was made upon it for the
property while it was in its possession. It seems to
be a well-settled principle that a common carrier is
guilty of no conversion, 'though he receive property
from one not rightfully entitled to possession, and, act-
ing as a mere conduit, deliver it in pursuance of the
bailment, if this is done before notice of the rights of
the real owner.   *   *   *  '"

Continuing, the court said:

"Indeed, the argument and the reasoning in that case
tend very strongly to the conclusion which we have
reached in this. We do not think it could be said that,
where a railroad company receives property for trans-
portation, which the law imperatively demands that it
shall receive when it is offered, and then, acting, as was
said in the case of Nanson v. Jacobs, supra, 'as a mere
conduit,' delivers it in pursuance of the bailment, it can
be said to exercise 'a dominion over it in exclusion or
in defiance' of the true owner's right; because, if the
true owner should, before the delivery of the property
by the carrier in pursuance of the bailment, make
demand for it or show his right to the possession of it,

and give notice of his intention to enforce that right, then the carrier would be bound to recognize that right, or, refusing to do so, would refuse at its peril."

But it is contended that the case of A., T. & S. F. Ry. v. International L. & I. Co., 247 Fed. 265, 159 C. C. A. 359, sustains appellant's contention as urged upon the hearing. That is a case somewhat similar to this in some of its features. The property in question consisted of three hotel cars, which came into the railroad company's possession after it had received notice. The company transported the cars over its line and delivered them to the person from whom it had received them, in the same condition as they were when received. The court says:

"The rule as commonly stated is that a common carrier is liable in conversion for misdelivery or nondelivery of property intrusted to it for transportation, and that upon the making of an adverse claim and demand by a third person the carrier assumes the risk of correctly deciding between the claimant and the shipper or consignee. The result of this is that, though the carrier is without adequate means of information, it will be held in conversion if it errs in its decision. In the statement of the rule it is generally recognized as productive of much hardship to common carriers, impartial as between the contending parties and desirous only of discharging the duties imposed upon them by law."

The court does not approve or disapprove of the rule, but in disposing of the case says:

"Giving full force to the incidents held in varying circumstances to constitute a conversion, we do not think sufficient were shown at the trial."

We fail to see that the case mentioned is of much force in aiding us in arriving at a conclusion. It seems that in that case both parties honestly asserted claim to the property. In the case before us the property had been stolen.

We are confronted with the case of Kohn v. R. & D. Ry. Co., 37 S. C. 1, 16 S. E. 376, 24 L. R. A. 100, 34 Am. St. Rep. 726, which was considered in Shellenberger v.

Fremont, etc., R. R. Co., 45 Neb. 487, 63 N. W. 859, 50 Am. St. Rep. 561, and disapproved, the court saying:

"There is no doubt that the assertion of conflicting claims has been the occasion of frequent embarrassment to bailees, particularly common carriers, who are bound to receive goods offered for transportation, although there has been suggested no sufficient reason for excepting them from the operation of the rule by which the rightful owner is permitted to reclaim property wherever found. We are aware of the exceptions to the rule, but they rest upon equitable considerations, none of which are presented by the record in this case, and need not, therefore, be noticed."

It may be said in this case with equal force that there are no equitable considerations appearing which would justify our following the Kohn case.

Our attention is called to the case of Switzler v. N. P. R. Co., 45 Wash. 221, 88 Pac. 137, 12 L. R. A. (N. S.) 254, 122 Am. St. Rep. 892, 13 Ann. Cas. 357, as holding contrary to the view which we entertain. Upon a casual reading of this case it might so seem, but the court in its opinion took it bodily out of the class of cases to which this case belongs. It said:

"When a person in the possession of personal property presents the same to such transportation company for shipment, upon the terms common to the public, such carrier, in the absence of actual knowledge, or of the facts that should readily lead to actual knowledge, to the contrary, may assume that the would-be shipper is rightfully in possession of said property and authorized to enter into a legal contract for its transportation. Not only may such carrier presume this to be the case, but it is legally bound so to do and to receive such property for shipment. Having so accepted and forwarded said property, it becomes its duty to fulfil the contract of shipment made with the consignor."

2. The court in that case apparently based its conclusion upon the fact that the railroad company did not have actual knowledge, or knowledge of facts which should have led to actual knowledge, of the rights of Switzler,

before receiving the horses for shipment, while in the case at bar, though it is admitted that notice was given to the railroad before it received the ore in question, it is urged upon rehearing that the description of the ore was too indefinite and uncertain to charge the company with knowledge of the rights of the respondent. By its avowal of its intention to ship the ore if tendered it, and basing its decision so to do, apparently upon its legal rights in the premises, rather than upon the indefinite description of the ore, of which it made no complaint at the time, we think it waived any right it might otherwise have to now insist that the description of the ore was too indefinite and uncertain to charge it with knowledge of the fact that the ore tendered it by Ephraim was the ore owned by respondent, and cannot now be heard to say that it did not have actual knowledge that the ore in question was the property of respondent.

Respondent takes exception to the view expressed in the original opinion relative to the other matters considered. Suffice it to say that after a careful consideration we are entirely satisfied with the views then expressed.

Counsel for appellant has filed a list of authorities, holding that we may enter an order directing the judgment which should be entered. There is no doubt as to the law on this point, but we do not feel that we would be justified in making such an order in this case.

For the reasons given in the original opinion, the order will be that the judgment of the district court be reversed, and the case remanded for a new trial, unless the respondent agrees, within ten days from the filing of the remittitur herein in the district court, in a written statement filed with the clerk of said court, to a reduction of said judgment to the sum of $287.28.

## ON COSTS

By the Court, COLEMAN, C. J.:

This case is now before the court on an appeal from a ruling of the clerk of this court upon the cost bill filed

by appellant. In the original opinion in this case it was ordered that, unless respondent consented to a reduction of the judgment from $2,121.70 to $287.28, a new trial would be granted. A rehearing was granted (both parties petitioning therefor), and upon final determination the original order was entered as to the merits of the case. Upon the rendition of the original opinion, appellant filed its cost bill. Since the opinion on rehearing was filed, appellant has filed a cost bill, including the items in its original cost bill and its costs on rehearing. Respondent has filed no cost bill, but has filed objections to appellant's cost bill. The clerk has overruled the objections, and allowed the items of cost as contained in the cost bill filed, from which respondent has appealed.

1. Section 5381, Revised Laws, provides that:

"In the following cases the costs of an appeal to the supreme court shall be in the discretion of the court:

"1. Where a new trial is ordered.

"2. When a judgment is modified. In the event no order is made by the court relative to the costs in the two instances mentioned in this section, the party obtaining any relief shall have his costs."

In the opinion on rehearing the court made no order as to costs; consequently, since appellant obtained relief, it necessarily follows that it should recover its costs. This is not open to debate. The statute is clear, emphatic, and peremptory to the effect that "the party obtaining any relief shall have his costs." The judgment against the appellant was ordered reversed, unless respondent agreed to a reduction from $2,121.70 to $287.28. Certainly it cannot be said that appellant did not obtain relief.

2. As to costs on rehearing, since both parties petitioned therefor, and neither obtained any relief as a consequence thereof, each party should pay his own costs incurred upon such rehearing.

It is therefore ordered that the ruling of the clerk of this court be so modified as to disallow appellant's costs incurred upon rehearing, and, as so modified, that his ruling be affirmed.